## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 14 B 34232 |
| CONCEPTS AMERICA, INC., | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| BRIAN AUDETTE, not individually but as | ) | |
| Chapter 7 Trustee of the Estate of Concepts | ) | |
| America, Inc., | ) | |
| | ) | Adv. No. 16 A 691 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Pamela S. Hollis |
| TED KASEMIR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on the motion of R. Kymn Harp and Robbins,
Salomon & Patt, Ltd. ("Harp/RSP" or Defendants) to dismiss Count X (Legal Malpractice),
Count XI (Civil Conspiracy To Commit Fraud and/or Breach Fiduciary Duties), Count XII
(Aiding and Abetting Breach of Fiduciary Duty) and Count XIII (Aiding and Abetting
Fraudulent Transfers) of the complaint filed by Brian Audette, Chapter 7 Trustee of the Estate of
Concepts America, Inc.

Having reviewed the complaint, the memoranda filed in support of and in response to the
motion to dismiss, as well as the supplemental exhibit, the court grants the motion as to Count
XIII and denies the motion as to all other requested relief.

## BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. Reger Dev., LLC v. National City Bank, 592 F. 3rd 759, 763 (7th Cir.), cert. denied, 561 U.S. 1026 (2010). For purposes of deciding this motion, except where designated, the court accepts the following well-pleaded facts as true:[1]

Concepts America, Inc. ("Concepts") is the debtor in the underlying bankruptcy case. It is an Illinois corporation with its principal office and place of business at 1840 Pickwick Lane in Glenview, Illinois. Amended Complaint, EOD 44 at ¶ 12.[2]

Defendants Ted Kasemir and Roger Greenfield each own 50% of the stock in Concepts. ¶ 12. They were its sole officers as Secretary/Treasurer and President, respectively. ¶ 48. Concepts does not have, and has never had, a board of directors. ¶ 49.

Defendant R. Kymn Harp is a licensed attorney who practices at and is a partner at Robbins, Salomon & Patt, Ltd. He and RSP were legal counsel to Concepts and other related entities. ¶ 30.

Defendant Concepts RM is an Illinois LLC formed by Greenfield and Kasemir. It is owned equally by them and has its principal place of business at 1840 Pickwick Lane. ¶ 32.

Debtor Concepts served as a holding and management company for a group of restaurants that was controlled, operated and either directly or indirectly owned by Greenfield and Kasemir (the "Restaurant Group"). ¶ 2.

Each restaurant was owned by its own holding company ("HoldCo"), with the HoldCos either owned by Concepts or by Kasemir and/or Greenfield. ¶ 2, 42-44.

---

[1] There are many more allegations in the complaint; these are the allegations relevant to Harp/RSP.
[2] All further citations in the format "¶__" are to the Amended Complaint at EOD 44.

2

Through Greenfield, Kasemir and its employees, Concepts helped develop new restaurants, provided legal, financial, operational and managerial services to the restaurants, and provided cash management services to all the Restaurant Group entities. ¶ 50.

There were no management agreements between Concepts and any of the HoldCos. Concepts also guaranteed leases for the HoldCos. It received no compensation or reimbursement for any of the services it rendered, including provision of the guarantees. ¶ 50-51.

Greenfield and Kasemir operated the Restaurant Group as a single economic unit. ¶ 52. Landlords requested financial statements from Concepts prior to entering leases with the HoldCos, or before agreeing to provide tenant improvement funds. ¶ 56. The consolidated financial statements falsely suggested that Concepts owned assets that were producing tens of millions of dollars more in revenue than they actually were. ¶ 62.

Most of the revenue from the restaurants was deposited into one of two bank accounts, regardless of whether Greenfield, Kasemir or Concepts owned that restaurant's HoldCo. ¶ 68-69. Money from those two accounts then frequently moved between other commingled accounts maintained by Concepts. ¶ 70.

By January 2012, Concepts was bouncing checks. During that year over 100 checks from one of the two main bank accounts were returned for insufficient funds. ¶ 109. At least three HoldCos defaulted under their leases between May 2012 and February 2013 – leases that Concepts had guaranteed. ¶ 110.

Concepts was insolvent by at least the beginning of 2012, and has remained insolvent through the date of the filing of this complaint. ¶ 112.

The gist of this complaint is based on the Trustee's theory that rather than trying to maximize value for creditors in light of Concepts' insolvency, Greenfield and Kasemir began a

multi-faceted campaign to extract any remaining value from Concepts and to hinder and delay its creditors. ¶ 113.

On February 21, 2013, at Harp's direction and with RSP's assistance, two new Illinois LLCs were formed listing Greenfield as the incorporator: (a) Concepts Restaurant Holding ("Holding"); and (b) Concepts Restaurant Management ("Concepts RM"). Concepts is the 100% member of Holding. Greenfield and Kasemir each own 50% of Concepts RM. Concepts RM is the manager of Holding, and Concepts RM is managed by Greenfield. ¶ 122.

Harp, or others at RSP working at his direction, prepared the operating agreements for Holding and Concepts RM. Despite having represented Concepts since 2009, Harp and RSP had not previously prepared any corporate documents, including operating agreements, for Restaurant Group entities. ¶ 123.

Holding's operating agreement provided that if any of its members were "dissociated", its manager (Concepts RM) could buy a 1% interest. ¶ 124.

Under the Illinois Limited Liability Company Act, "dissociation" occurs if, inter alia, a member becomes a debtor in bankruptcy. 805 ILCS 180/35-45(7)(A) (West 2018). Upon dissociation, a member loses the right to participate in management. 805 ILCS 180/35-55(a)(1) (West 2018).

As of March 3, 2013, Concepts-owned HoldCos included: (1) 111 Wacker Restaurant Corp.; (2) Bluepoint Hollywood, Inc.; (3) 33 Restaurant, Inc.; (4) Midtown Kitchen & Bar, Inc.; and (5) One North, Inc. (the "Five Subsidiaries"). Each of these Concepts-owned corporations owned one restaurant. ¶ 121.

The next day, Concepts transferred 100% of its shares in the Five Subsidiaries to Holding (the "Subsidiary Transfer"). Concepts received no consideration in return. ¶ 126.

The Trustee argues that the practical effect of the Subsidiary Transfer was to ensure that Greenfield and Kasemir would remain in control of the Five Subsidiaries in the event a trustee or a receiver were appointed for Concepts. They would be able to keep revenue that otherwise would have been collected for the benefit of creditors. ¶ 128.

About a month after the Subsidiary Transfer, Harp wrote a memo outlining its rationale (the "March 29 Memorandum"). According to the March 29 Memorandum, the purpose of the Subsidiary Transfer was to separate

> high quality performing restaurant operations from low performing or failing restaurant operations to enable the high quality holdings to be sold, financed, or capitalized as a package of restaurants, at a value exceeding the sum value of the individual restaurants. The objective of this strategy is to enhance the value of Concepts America, Inc. to its shareholders and all stakeholders.
>
> March 29 Memorandum, EOD 189.

According to the Trustee's allegations, this rationale was fake. The Subsidiary Transfer involved all of Concepts' remaining subsidiaries, so nothing was "packaged." ¶ 131.

The March 29 Memorandum did not discuss the impact on creditors from the restructuring or the ramifications if Concepts were to dissociate from Holding. ¶ 131; EOD 189.

After Concepts became insolvent, Greenfield and Concepts General Counsel Rachel Dennis began to pursue new restaurant ventures outside of Concepts. ¶ 140.

On December 11, 2012, a new entity called Smith & Wells, LLC was formed with the Illinois Secretary of State. Harp was listed as its registered agent. Smith & Wells owns a restaurant known as "Randolph Tavern" at 188 W. Randolph Street in Chicago. ¶ 141.

According to Greenfield, Smith & Wells is owned by his wife and Rachel Dennis. The three of them have developed at least three other Chicago-area restaurants since 2012 without offering those opportunities to Concepts. ¶ 142. Harp is listed as the registered agent for all of

these restaurants.  He and/or other RSP attorneys have performed legal services for at least some of these restaurants.  ¶ 144.

Greenfield and Kasemir executed a document entitled "Exercise of Right to Become a Member of Concepts Restaurant Holding, LLC" (the "Exercise of Rights Document") with an effective date of November 18, 2014.  This is the same date that the order for relief was entered in Concepts' bankruptcy case.  Harp and/or others at RSP acting at his direction drafted the Exercise of Rights Document and advised Greenfield and Kasemir to sign it.  Pursuant to the Exercise of Rights Document, Concepts RM purported to exercise its right to become a 1% owner of Holding.  ¶ 149.

When Concepts RM became a 1% owner of Holding, this gave Greenfield and Kasemir the sole right to manage the two restaurants that remained of the Five Subsidiaries.  They used that control to divert those entities' revenue for their benefit, rather than for Concepts' benefit. ¶ 150.

Between November 18, 2014 and the time that the Trustee obtained a court order gaining control of those two restaurants, the restaurants paid RSP approximately $400,000.  These payments were not for services rendered to the restaurants.  ¶ 150.

Shortly after the interim trustee Frances Gecker was appointed in the underlying bankruptcy case, Greenfield emailed Harp about his concern that Gecker would "go after 111 and grillroom" (the two restaurants that remained of the Five Subsidiaries).  In response, Harp acknowledged that there was always a risk the Subsidiary Transfer could be construed as a fraudulent transfer and stated that he had previously advised Greenfield of this fact.  Harp also wrote that the March 29 Memorandum was "prepared in early March while you were trying to obtain financing."  ¶ 152 and Complaint, Ex. F.

6

# LEGAL DISCUSSION

Harp/RSP moves to dismiss this complaint pursuant to Fed. R. Bankr. P. 7012(b), which

incorporates Fed. R. Civ. P. 12(b)(6).  Defendants argue that each count fails to state a claim

upon which relief may be granted.

<u>Standards for Reviewing Complaints and Motions to Dismiss</u>

Fed. R. Civ. P. 8, made applicable in adversary proceedings pursuant to Fed. R. Bankr. P.

7008, provides guidance for plaintiffs regarding the requirements for stating a claim.

> **(a) Claim for Relief.** A pleading that states a claim for relief must contain:
>
> > **(1)** a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> >
> > **(2)** a short and plain statement of the claim showing that the pleader is entitled to relief; and
> >
> > **(3)** a demand for the relief sought, which may include relief in the alternative or different types of relief.

This pleading standard does not require detailed allegations, "but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 678 (2009) (citations omitted).  "Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions."  <u>Id.</u> at 678-79.

As the Seventh Circuit recently instructed:

> In evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor. Although a party need not plead detailed factual allegations to survive a motion to dismiss, mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Instead, [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

Berger, et al. v. National Collegiate Athletic Assn., et al., 843 F. 3rd 285, 289-90 (7th Cir. 2016)

(citations and quotations omitted).

Iqbal and its predecessor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), provide

a more rigorous test for complaints than that previously applied in this Circuit. The court will

review this motion to dismiss under that stricter standard, although it considers well-pleaded

facts and the reasonable inferences drawn from them in the light most favorable to the Trustee

when determining whether the complaint states a plausible claim to relief. Reger Dev., 592 F. 3rd

at 763. Although well-pleaded facts are viewed in a plaintiff's favor, allegations that are no

more than conclusions are not presumed to be true for purposes of deciding this motion to

dismiss.

Defenses to the Trustee's Common Law Causes of Action

The Trustee has the right to pursue common law causes of action because he steps in the

shoes of the Debtor, Concepts. As a result, however, any such claims he brings "are subject to

the same defenses that [Harp/RSP] could have asserted had [Concepts itself] filed suit."

Peterson v. McGladrey & Pullen, LLP, 676 F. 3rd 594, 596 (7th Cir. 2012). Before reviewing

whether each count plausibly states a claim for relief, the court will consider the defenses raised

by Harp/RSP in its motion to dismiss.

Harp/RSP raises two such defenses in its motion to dismiss: the equitable defense of in

pari delicto; and the statute of limitations. It also argues that the Trustee failed to plead damages,

a required element of each of these causes of action.

Although affirmative defenses are generally pled in an answer, Fed. R. Civ. P. 8(c)(1), it

is appropriate to dismiss a complaint if the facts alleged within that complaint set out all the

elements of a defense.  Independent Trust Corp. v. Stewart Information Services Corp., 665 F. 3rd 930, 935 (7th Cir. 2012).

> The in pari delicto defense does not bar the Trustee from bringing the common law claims on behalf of Concepts.

"The doctrine of in pari delicto embodies the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." King v. First Capital Financial Services Corp., 828 N.E. 2nd 1155, 1173 (Ill. 2005) (quotation omitted). The doctrine has been applied to a bankruptcy trustee's claims on behalf of the bankruptcy estate against attorneys. Peterson v. Winston & Strawn, LLP, 2012 WL 4892758 (N.D. Ill. Oct. 10, 2012) ("Winston & Strawn"), aff'd, 729 F. 3rd 750 (7th Cir. 2013), cert. denied, 134 S. Ct. 1497 (2014).

The first question is whether the alleged wrongdoing by Greenfield and Kasemir is imputed to Concepts, the corporation in which they were the sole shareholders and officers and for which there was no board of directors.  If their wrongdoing is imputed, then Concepts – and the Trustee, who steps into Concepts' shoes – is barred by the doctrine of in pari delicto from maintaining a claim against Harp/RSP.

Greenfield and Kasemir were the 100% shareholders and officers of Concepts, so normally their knowledge or conduct would be imputed to Concepts.  McRaith v. BDO Seidman, LLP, 391 Ill. App. 3rd 565, 589 (Ill. App. Ct. 2009) ("Generally, the knowledge and conduct of agents are imputed to their principals.")  But the Trustee argues that the "adverse interest" exception applies, and that imputation would be improper.

An insider's knowledge or conduct can only be imputed to the corporate entity when that conduct was done for the benefit of the corporation.  An "exception to the general rule sensibly applies when the agent's interests become adverse to the principal." Winston & Strawn, at *4.

9

In other words, if Greenfield and Kasemir were hurting Concepts with their actions, then their interests were adverse to Concepts' interests. Imputation would not be proper, and the doctrine of in pari delicto would not bar the Trustee from maintaining these claims.

Taking the allegations in the complaint as true, the purpose of their actions was to allow Greenfield and Kasemir to keep control of Concepts' assets even after a Chapter 7 petition was filed. Revenue that would have accrued to Concepts' benefit was allegedly diverted to Greenfield and Kasemir. As the court will discuss more extensively in the damages section below, the changes in corporate structure as well as the provision allowing Concepts RM to acquire 1% of Holding may have impacted Concepts' value well before the bankruptcy was filed. And post-petition, their actions ensured "that no profits from Townhouse or Grillroom flowed up through Holding to Concepts." Amended Complaint, ¶ 150. Therefore, the adverse interest exception may apply, barring imputation of Greenfield's and Kasemir's knowledge to Concepts, thus rendering the in pari delicto defense inapplicable.

Harp/RSP argues that there is an exception to the exception, however. Even if the adverse interest exception is applicable, it does not bar the in pari delicto defense "where the agent who loots a corporation is its sole owner and shareholder." McRaith, 391 Ill. App. 3rd at 591. This is known as the sole-owner doctrine.

The Trustee first argues that Harp/RSP did not raise the sole-owner doctrine in its motion, and thus cannot address it in reply. But the Trustee raised the defense in his response, giving Harp/RSP the opportunity to write about it in its reply, and the court will not ignore an issue that both parties analyzed.

The Trustee asserts that the sole-owner doctrine applies only where "all relevant shareholders and decisionmakers were involved in the fraud." Grede v. Bank of N.Y., 2009 WL

10

1657578, *2 (N.D. Ill. June 12, 2009) (quotation omitted). Since his allegations that Harp/RSP

assisted Greenfield and Kasemir in their fraud include actions that occurred after the bankruptcy

filing, when an interim trustee was in control, there was an "innocent insider with authority to

stop the fraud," id. at *3, so the sole-owner doctrine does not apply.

This argument is flimsy. Taking as true the allegations in the complaint, nearly all of

Harp/RSP's legal services were provided prior to the bankruptcy filing. The creation of Holding

and Concepts RM, and the preparation of the operating agreements that allowed for Concepts

RM to take a 1% interest in Holding if Concepts dissociated, occurred prior to the bankruptcy

filing. The Exercise of Rights Document was executed on November 18, 2014, the same day

that the order for relief was entered, and thus Harp/RSP must have prepared it beforehand.

Harp's email to Greenfield was the only action he was alleged to have taken postpetition, and it

merely provided an explanation of past actions – it did not provide substantial assistance to

future actions.

The Trustee more successfully asserts that Illinois "preclude[s] the participants in a fraud

from appealing to the 'sole actor' doctrine." Ash v. Georgia-Pacific Corp, 957 F. 2nd 432, 436

(7th Cir. 1992) (citation omitted). In other words, Harp/RSP knew that the sole owners –

Greenfield and Kasemir – were engaged in culpable conduct, and allegedly participated in the

fraud itself, thus Harp/RSP cannot avail itself of this exception to the exception.

This argument finds traction on a motion to dismiss. The Seventh Circuit has

acknowledged in dicta that the "sole actor exception is designed to protect innocent third

parties." U.S. v. One Parcel of Land Located at 7326 Highway 45 North, Three Lakes, Oneida

County, Wis., 965 F. 2nd 311, 318 (7th Cir. 1992). The facts that come out at trial may show

Harp/RSP to be as innocent of wrongdoing as any third party customer or vendor, and the

application of the sole-owner doctrine may need to be reconsidered. But taking the allegations in

the complaint as true, and construing all inferences in the Trustee's favor, the sole-owner

doctrine cannot apply to bar the adverse interest exception where Harp/RSP is not alleged to be

an innocent third party. At this time, the <u>in pari delicto</u> defense is unavailable to Harp/RSP.

Having determined that at this time the sole-owner doctrine does not bar the adverse

interest exception, the court need not consider the Trustee's remaining arguments regarding the

<u>in pari delicto</u> defense. It is inapplicable.

> ### The statute of limitations defense does not bar the Trustee from bringing the common law claims on behalf of Concepts.

Harp/RSP asserts that the statute of limitations bars the Trustee from bringing claims

against it. The Trustee does not dispute that his common law claims against Harp/RSP are

governed by the statute of limitations that applies to attorneys:

> An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services or (ii) against a non-attorney employee arising out of an act or omission in the course of his or her employment by an attorney to assist the attorney in performing professional services must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought.

735 ILCS 5/13-214.3 (West 2018).

Nor does the Trustee disagree with Harp/RSP that the "arising out of" language in this

section applies broadly "to all claims against attorneys concerning their provision of professional

services" and is not "restricted to claims for legal malpractice." <u>Evanston Ins. Co. v.

Riseborough</u>, 5 N.E. 3rd 158, 166 (Ill. 2014). It is also undisputed that the limitations period

begins to run when the plaintiff "knows or reasonably should know of his injury and also knows

or reasonably should know that it was wrongfully caused." <u>Morris v. Margulis</u>, 754 N.E. 2nd

314, 318 (Ill. 2001).

Harp/RSP argues that the Trustee pled himself into this affirmative defense in paragraphs

8 and 9 of the Amended Complaint:

> 8.    Rather than trying to maximize value for creditors in light of Concepts'
> insolvency, Roger and Ted instead took numerous actions to hinder and delay
> them.  As discussed in greater detail below, Roger and/or Ted:
>
>> (A)    Saddled all HoldCos with illegitimate insider "loan"
>> obligations.
>
>> (B)    Diverted millions of dollars in Restaurant Group revenue
>> that had previously flowed into accounts owned by Concepts into accounts
>> owned by non-Concepts entities (later defined as the "De-Coupling").
>
>> (C)    With extensive assistance from Harp and RSP, transferred
>> ownership of all five Concepts-Owned HoldCos that remained operating
>> to a new entity for no consideration, and structured the transaction to
>> allow Roger and Ted to take control of those HoldCos in the event of a
>> Concepts bankruptcy.
>
>> (D)    Borrowed $650,000 from a failing bank and used the
>> proceeds for their own benefit (including to finance a $200,000
>> "investment"/payment to the bank), all while burdening Concepts and
>> three HoldCos with a bank lien on all their assets (which were previously
>> unencumbered).
>
>> (E)    Used Concepts' services and assets to open new restaurants
>> that were not owned by Concepts and, in at least some cases, are
>> nominally owned by Roger's wife.
>
> 9.    Consequently, when landlords began to obtain judgments against
> Concepts, post-judgment discovery revealed a far different picture than the one
> painted by the financials.  Concepts now had no direct assets, no revenues, and
> both it and its indirect subsidiaries were encumbered.  Creditors worked together
> to file the involuntary bankruptcy petition on September 19, 2014.

According to Harp/RSP, the Trustee affirmatively pled that the landlord creditors became

possessed of sufficient knowledge of the Subsidiary Transfer and of their injuries by the time

they filed the involuntary bankruptcy petition on September 19, 2014, so that they knew or

reasonably should have known that they had claims against Harp/RSP as of that date.  This

adversary proceeding was not filed until more than two years after September 2014.

Putting aside the question of whether the landlord creditors' knowledge should be imputed to the Trustee – which Harp/RSP assumes without explanation or analysis – the court agrees completely with the Trustee's response: "knowledge of the fact of Concepts' insolvency is hardly equivalent to knowledge of how that insolvency was caused, let alone that RSP might have contributed to it." Response, at p. 13.

The Trustee alleges in paragraph 8 that Harp/RSP provided extensive assistance to Greenfield and Kasemir in accomplishing the Subsidiary Transfer. Separately, in paragraph 9, the Trustee alleges that the landlord creditors learned prior to filing the involuntary petition that Concepts had no direct assets and no revenues. There are no allegations about the landlord creditors' knowledge of the Subsidiary Transfer. Nor did the Trustee allege that the landlord creditors learned through post-judgment discovery that Harp/RSP had been instrumental in creating and executing the Subsidiary Transfer. There is nothing in paragraphs 8 and 9 from which the court can conclude that the Trustee is barred from bringing these claims against Harp/RSP under the statute of limitations.

Since the complaint does not set out all the elements of the statute of limitations defense, the motion to dismiss is denied on this ground. It is certainly possible that through discovery Harp/RSP will gather facts in support of this defense that can be presented at trial, and the court will review those facts and analyze the applicable law[3] at the appropriate time.

### The Trustee alleged that Concepts was damaged by Harp/RSP's actions.

The Trustee alleged in the complaint that Concepts was insolvent by at least the beginning of 2012, and has remained insolvent through the date he filed the complaint. The actions taken by Harp/RSP that form the basis of the Trustee's claims did not occur until at least

---

[3] The applicable law may include 11 U.S.C. § 108(a), which provides that a trustee has two years after the order for relief to bring a cause of action if the limitations period has not expired prepetition. The order for relief was entered on November 18, 2014. This adversary proceeding was filed on November 17, 2016.

February 2013. Harp/RSP argues that since the Trustee admitted that Concepts was insolvent

before Harp/RSP did any of its alleged bad acts, he cannot prove that Concepts suffered any

damages as a result of those acts.

Actual damages must be pled as an element of each of the Trustee's common law claims.

Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 837 N.E. 2nd 99,

107 (Ill. 2005) ("[t]he existence of actual damages is therefore essential to a viable cause of

action for legal malpractice") (citation omitted); Grimes v. Saikley, 904 N.E. 2nd 183, 196 (Ill.

App. Ct.) ("to properly plead the tort of aiding and abetting, one must allege" that the wrongful

act caused an injury), appeal denied, 232 Ill. 2nd 579 (2009); Peterson v. A Clear Title and

Escrow Exch., LLC, 2017 WL 1134483 (N.D. Ill. March 27, 2017) (claims for fraud and breach

of fiduciary duty require an injury caused by the defendant's actions).

The Trustee argues that a bankruptcy trustee may sue for malpractice even when creditors

could not bring the claim directly. Fehribach v. Ernst & Young LLP, 493 F. 3rd 905, 909 (7th Cir.

2007). Harp/RSP asserts that the Trustee has missed the point, arguing that the debtor in

Fehribach suffered actual damages as a result of the alleged malpractice, while in this case

Concepts was already insolvent, and therefore as of the bankruptcy filing had suffered no

damages. "It is the Trustee's theory that the damages resulting from RSP's actions in assisting

with the subsidiary transfer occurred _after_ the bankruptcy filing when the trustee could not seize

control of the restaurant entities." Reply, at p. 14 (emphasis in original). Since the element of

damages was missing as of the petition date, the cause of action is fatally flawed and must be

dismissed.

Harp/RSP would have the court subscribe to the view that an insolvent company cannot

be injured or suffer damages. But as the Fehribach court explained, "a corporation can be

insolvent in the sense of being unable to pay its bills as they come due ("equity" insolvency), yet

be worth more liquidated than the sum of its liabilities and so be worth something to the

shareholders; this was assumed to be a possibility in Schacht, 711 F.2d at 1348." Fehribach, 493

F. 3rd at 908 (citation omitted).

Fehribach was explaining the theory of "deepening insolvency," where a corporation's

insolvent state is disguised and its losses increase as its existence is artificially prolonged.  This

theory "is sometimes available in cases where . . . there are allegations suggesting management

in cahoots with an auditor or other outsider concealed the corporation's perilous state." Riley v.

Sikich LLP, 2012 WL 5559752, *4 (N.D. Ill. Nov. 14, 2012) (explaining Fehribach) (quotation

omitted).

Moreover, it is plausible for the court to infer that at trial the Trustee can prove that

Concepts was damaged by Harp/RSP's actions in facilitating the Subsidiary Transfer.  The

March 29 Memorandum extolled the virtues of the Subsidiary Transfer, claiming it would

enhance Concepts' value, but that memo never mentioned the provision allowing Concepts RM

to take a 1% membership interest if Concepts were dissociated.  What was the impact of that

provision on Concepts' value?  And while on paper Concepts still owned the Five Subsidiaries

after the Subsidiary Transfer, it was now at an increased risk of losing control due to the new

corporate structure that Harp/RSP created.  Did that increased risk also have an impact on

Concepts' value?  Whether or not those changes damaged Concepts is a question for trial, but the

allegations in the complaint allow the court to infer that the Trustee plausibly alleged damages.

Having resolved the defenses raised by Harp/RSP, the court will review each count to

determine whether the complaint contains sufficient factual matter, accepted as true, to state a

claim for relief that is plausible on its face.

Count X (Legal Malpractice)

In order to state a claim for legal malpractice, the complaint must contain sufficient allegations, accepted as true, from which the court may infer: "(1) that the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship, (2) that the defendant breached that duty, and (3) that as a proximate result, the plaintiff suffered injury." Driscoll v. Kins, 2017 WL 4122715, at *4 (N.D. Ill. Sept. 18, 2017) (citations omitted).

Harp/RSP does not argue that the Trustee has failed to state a claim for legal malpractice. As discussed above, this common law claim is not barred by the defenses of in pari delicto or the statute of limitations, and the Trustee sufficiently alleged damages. The motion to dismiss is denied as to Count X.

Count XI (Civil Conspiracy to Commit Fraud and/or Breach Fiduciary Duties)

To survive a motion to dismiss, a claim for civil conspiracy must contain sufficient factual matter, accepted as true, to support the inference that there was:

> (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.

Turner v. Hirschbach Motor Lines, 854 F. 3rd 926, 930 (7th Cir. 2017) (quotation omitted). The "agreement is a necessary and important element of this cause of action . . ." Id. (quotation omitted).

"[C]laims for conspiracy may be maintained against attorneys where there is evidence that the attorneys participated in a conspiracy with their clients." Thornwood, Inc. v. Jenner & Block, 799 N.E.2d 756, 768 (Ill. App. Ct. 2003), as modified on denial of reh'g (Nov. 10, 2003) (citation omitted), appeal denied, 207 Ill. 2nd 630 (Ill. 2004).

The Trustee alleges that Harp/RSP engaged in a conspiracy with Greenfield and Kasemir to "defraud and breach fiduciary duties owed to Concepts and its creditors. Specifically, the Conspirators [Greenfield, Kasemir, Rodd Goldman, Harp and RSP] knowingly agreed to unlawfully strip assets from Concepts, hinder and delay Concepts' creditors, and enrich themselves to the detriment of Concepts and its creditors at a time they knew Concepts to be insolvent." ¶ 259-260. The allegedly tortious acts include the Subsidiary Transfer and restructuring of certain Restaurant Group entities, and execution of the Exercise of Rights Document by which Concepts RM took a 1% interest in Holding, as well as Greenfield's and Dennis's non-Concepts restaurant ventures.

Harp/RSP points out that there are no allegations that it made false statements to creditors or concealed material facts. Neither are there any allegations to support the Trustee's argument that "Harp (and thus RSP) was the driving force behind the underlying unlawful transactions." Response, at p. 6.

But those allegations need not be made in order for this claim for civil conspiracy to survive the motion to dismiss. The Trustee is required to plead allegations that, if true, state a claim to relief that is plausible on its face. From the allegations of the complaint, it is plausible that Harp/RSP agreed with Greenfield and Kasemir to help them restructure Concepts and the Restaurant Group entities in a manner that benefitted them and breached their fiduciary duties to Concepts. Why, after four years of representing these parties, did Harp prepare operating agreements for the first time? Looking at these allegations in the light most favorable to the Trustee, the court may infer that Greenfield and Kasemir brought Harp into their confidence about their motives. On or about the same time, Harp wrote the March 29 Memorandum,

presenting a rationale for the Subsidiary Transfer that appeared valid but made no mention of the possible deleterious effect on Concepts' value of this new corporate structure.

Perhaps Harp was truly ignorant of Greenfield's and Kasemir's motives.  Perhaps he had no idea that Greenfield and Kasemir had engaged in this sort of high-stakes corporate juggling act before and that claims for civil conspiracy had been brought by a bankruptcy trustee against their attorneys.  See In re Restaurant Development Group, Inc., 397 B.R. 891, 897 (Bankr. N.D. Ill. 2008) ("The Trustee alleges that beginning in 2003, the Attorney Defendants conspired with Greenfield, Kasemir and Lee Zaben to effectuate transfers of RDG's assets from RDG and RDG Chicago, particularly the RDG Revenue Stream in order to hinder, delay and defraud creditors of RDG, and knowingly created back-dated documents in furtherance of the fraudulent transfer of assets from RDG to RDG Chicago. . . .  Taken as true for purposes of this motion, the Trustee met his burden of pleading that Attorney Defendants engaged in a civil conspiracy to commit fraud.") (Schmetterer, J.).

But from the allegations presented in the complaint, this cause of action survives a motion to dismiss.  The Trustee will have the opportunity to prove at trial that Harp knew what Greenfield and Kasemir wanted to accomplish and agreed to help them put their interests above the corporation to which they owed a fiduciary duty.  He can call Harp as a witness to prove that in fact he was "the driving force" behind the scheme, and actively conspired with Greenfield and Kasemir.  Harp/RSP can present its own case, or it can argue that the Trustee failed to meet the much heavier burden he must satisfy at trial.  At this point in the proceedings, however, the Trustee need only plausibly allege a cause of action, and he has done so.  The motion to dismiss is denied as to Count XI.

Count XII (Aiding and Abetting Breach of Fiduciary Duty)

In order to state a claim for aiding and abetting a breach of fiduciary duty, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to support the following elements:

> (1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant was aware of his role when he provided the assistance, and (3) the defendant knowingly and substantially assisted the violation.

Hefferman v. Bass, 467 F. 3rd 596, 601 (7th Cir. 2006) (citation omitted). "The same policy [that recognizes that claims for conspiracy may be maintained against attorneys] should prevent an attorney from escaping liability for knowingly and substantially assisting a client in the commission of a tort." Thornwood, 799 N.E. 2nd at 768. In this count, the wrongful act would be Greenfield's and Kasemir's alleged breach of their fiduciary duty to Concepts.

Harp/RSP argues that the Trustee has alleged no facts that could give rise either to the inference that Harp was aware of his role in any breach of fiduciary duty or to the inference that Harp knowingly and substantially assisted in any breach. Meanwhile, the Trustee asserts that the following allegations, and inferences drawn from these allegations, support his claim for aiding and abetting:

- ■ Harp/RSP had previously represented Greenfield and Kasemir in forming dozens of corporate entities, but the transaction that created Holding and Concepts RM was the first time Harp/RSP had prepared the corporate documents. Complaint ¶ 123.

- ■ Harp's memo contained a transparently pretextual rationale for the transaction. Complaint ¶ 131.

- ■ After the interim trustee was appointed, Greenfield and Harp exchanged emails in which Harp explained why a trustee might believe the transactions were fraudulent transfers. Complaint, Ex. F.

- ■ RSP received $400,000 more than it otherwise would have received. Complaint, ¶ 150.

In deciding whether a trial court had properly dismissed a claim against a law firm for aiding and abetting, the Illinois Appellate Court pointed out that allegations about the law firm's actions had gone far beyond "mere receipt of copies of letters" that exposed the client's breach of fiduciary duty. Thornwood, 799 N.E. 2nd at 768.

Similarly, the Trustee's allegations in this complaint go beyond a ministerial act (such as receiving a letter). The Trustee alleges that Harp/RSP created limited liability companies and revised Concepts' corporate structure in a manner that may have damaged its value. The March 29 Memorandum may provide a perfectly valid reason for the Subsidiary Transfer, but the Trustee's alternative explanation is plausible as well. Since reasonable inferences must be drawn in the light most favorable to the plaintiff, the Trustee has done all that is required at this stage of the proceedings.

At trial, the evidence might not show that Harp was aware of his role at the time that he rendered these legal services, or that he knowingly and substantially assisted Greenfield and Kasemir. He will have an opportunity to explain the Subsidiary Transfer, and why his March 29 Memorandum is not the piece of fiction the Trustee claims it is. He can testify to his belief "that the [Subsidiary T]ransfer was not made for the primary purpose of hindering or delaying creditors, but rather to package the restaurants in a marketable/financeable bundle to maximize their value to the shareholders and stakeholders in Concepts America, Inc." Complaint, Ex. F (emphasis in original). Such testimony will give the court the opportunity to judge his credibility.

The Trustee need only plausibly allege factual matter that provides support for the court to infer that he can maintain this cause of action. This he has done. The motion to dismiss will be denied as to Count XII.

21

Count XIII (Aiding and Abetting Fraudulent Transfers)

The Trustee seeks relief against Harp/RSP for aiding and abetting fraudulent transfers under the Illinois Fraudulent Transfer Act. This claim will be dismissed because, as Judge Goldgar wrote last year, "there is no such thing as a claim for aiding and abetting a fraudulent transfer." Gierum v. Glick, 568 B.R. 634, 678 (Bankr. N.D. Ill. 2017).

11 U.S.C. § 550 provides that to the extent a transfer is avoided under § 544, a trustee's recovery is limited to the property transferred or the value of such property from "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee." As a result, "[o]verwhelmingly, courts have concluded that parties cannot be liable for a fraudulent transfer if all they have done is participate in it." Glick, 568 B.R. at 677 (citations omitted). Harp/RSP was neither a transferee of any fraudulent transfer nor the immediate or mediate transferee. No claim for aiding and abetting a fraudulent transfer can be maintained against Harp/RSP under the facts alleged in this complaint. The motion to dismiss will be granted as to Count XIII.

## CONCLUSION

For all of the reasons stated above, the motion is granted as to Count XIII and denied as to all other requested relief. Count XIII, which is brought only against Harp and Robbins, Salomon & Patt, is dismissed.

Date: _MAR - 1 2018_ _____
_____
PAMELA S. HOLLIS
United States Bankruptcy Judge