UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14 B 34232 |
| CONCEPTS AMERICA, INC., ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| BRIAN AUDETTE, not individually but as ) | |
| Chapter 7 Trustee of the Estate of Concepts ) | |
| America, Inc., ) | |
| ) | Adv. No. 16 A 691 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge Pamela S. Hollis |
| TED KASEMIR, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the court on the motions of Rodd Goldman, One North, Inc. (EOD 74), Restaurants-America Consulting Group, Inc., d/b/a Restaurants America and Restaurants-America Trademark, Inc. (EOD 88) and Rosemont Restaurant, LLC, 1645 W. Jackson, Inc., Prime Bar America, LLC, Prime Bar Chicago, LLC and Prime Bar Tampa, LLC (EOD 91) to dismiss Count I of the complaint filed by Brian Audette, Chapter 7 Trustee of the Estate of Concepts America, Inc.

Having reviewed the complaint, the motions to dismiss, and the memoranda filed in support of and in response to the motions, the court grants the motions in part and dismisses Count I of the complaint. The remainder of these motions to dismiss will be continued to the next status date on this complaint.

## BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. Reger Dev., LLC v. National City Bank, 592 F. 3rd 759, 763 (7th Cir.), cert. denied, 561 U.S. 1026 (2010). For purposes of deciding this motion, the court accepts the following well-pleaded facts as true:[1]

Concepts America, Inc. ("Concepts") is the debtor in the underlying bankruptcy case. It is an Illinois corporation with its principal office and place of business at 1840 Pickwick Lane in Glenview, Illinois. Amended Complaint, EOD 44 at ¶ 12.[2]

Defendants Ted Kasemir and Roger Greenfield each own 50% of the stock in Concepts. ¶ 12-14. They were its sole officers as Secretary/Treasurer and President, respectively. ¶ 48. Concepts does not have, and has never had, a board of directors. ¶ 49.

Debtor Concepts served as a holding and management company for a group of restaurants that was controlled, operated and either directly or indirectly owned by Greenfield and Kasemir. ¶ 2.

Each restaurant was owned by its own holding company ("HoldCo"), with the HoldCos either owned by Concepts or by Kasemir and/or Greenfield. ¶ 2, 42-43. Five of the HoldCos are relevant for purposes of this opinion:

Park Tavern Rosemont is an Illinois LLC with its principal office at 1840 Pickwick. It is owned by some combination of Greenfield and Kasemir, and its primary asset is a "Park Tavern" restaurant located in Rosemont, Illinois. ¶ 21.[3]

---

[1] There are many more allegations in the complaint; these are the allegations relevant to this Memorandum Opinion. More background can be found in the Order Granting Motion to Dismiss Count XVII at EOD 183 and the Memorandum Opinion at EOD 201.

[2] All further citations in the format "¶__" are to the Amended Complaint at EOD 44.

[3] According to the first paragraph of the complaint, movant Rosemont Restaurant, LLC is also known as "Park Tavern Rosemont."

2

Park Tavern Chicago is an Illinois corporation with its principal office at 1840 Pickwick. It is owned by some combination of Greenfield and Kasemir, and its primary asset is a "Park Tavern" restaurant on Jackson Street in Chicago. ¶ 23.[4]

Prime Bar Chicago is an Illinois LLC with its principal office at 1840 Pickwick. Greenfield and Kasemir each own 50% interests in Prime Bar Chicago. Its primary asset is a "Prime Bar" restaurant on Wacker Drive in Chicago. ¶ 24.

Prime Bar Tampa is an Illinois LLC with its principal office at 1840 Pickwick. It is owned by some combination of Greenfield and Kasemir and its primary asset is a "Prime Bar" restaurant in Wesley Chapel, Florida. ¶ 25.

One North is an Illinois corporation with its principal place of business in Chicago. Its primary asset is a "One North Kitchen & Bar" restaurant located in Chicago. ¶ 26.

Restaurants-America Consulting Group, Inc., d/b/a Restaurants America and Restaurants-America Trademark, Inc. (together, the "RA Entities") are Illinois corporations with their principal place of business at 1840 Pickwick. They are owned and managed by Greenfield and Kasemir. ¶ 27-¶ 28.

Prime Bar America is an Illinois LLC with its principal office at 1840 Pickwick. It is owned by some combination of Greenfield and Kasemir, and while it did not own a restaurant, it maintained a bank account where HoldCo revenue was deposited. ¶ 22.

The Trustee uses the term the "Restaurant Group" to refer collectively to Concepts, all HoldCos for which Concepts provided common services (there are or were many other HoldCos besides the five named above) and the RA Entities.[5]

---

[4] According to the first paragraph of the complaint, movant 1645 W. Jackson, Inc. is also known as "Park Tavern Chicago."
[5] It is unclear whether this term includes Prime Bar America, which does not own a restaurant.

3

Through Greenfield, Kasemir and its employees, Concepts helped develop new restaurants, provided legal, financial, operational and managerial services to the restaurants, and provided cash management services to all the Restaurant Group entities. ¶ 50. There were no management agreements between Concepts and any of the HoldCos. ¶ 51.

Concepts also guaranteed leases for the HoldCos. It received no compensation or reimbursement for any of the services it rendered, including provision of the guarantees. ¶ 50-51.

Greenfield and Kasemir operated the Restaurant Group as a single economic unit. ¶ 52. Landlords requested financial statements from Concepts prior to entering leases with the HoldCos, or before agreeing to provide tenant improvement funds. ¶ 56. The consolidated financial statements falsely suggested that Concepts owned assets that were producing tens of millions of dollars more in revenue than they actually were. ¶ 62.

Most of the revenue from the restaurants was deposited into one of two bank accounts, regardless of whether Greenfield, Kasemir or Concepts owned that restaurant's HoldCo. ¶ 68-69. Money from those two accounts then frequently moved between other commingled accounts maintained by Concepts. ¶ 70.

By January 2012, Concepts was bouncing checks. During that year over 100 checks from one of the two main bank accounts were returned for insufficient funds. ¶ 109. At least three HoldCos defaulted under their leases between May 2012 and February 2013 – leases that Concepts had guaranteed. ¶ 110.

Concepts was insolvent by at least the beginning of 2012, and has remained insolvent through the date of the filing of this complaint. ¶ 112.

## LEGAL DISCUSSION

In Count I, the Trustee seeks to substantively consolidate Concepts with Park Tavern Rosemont, Prime Bar Tampa, Prime Bar Chicago, Park Tavern Chicago, Prime Bar America, One North, and the RA Entities ("Defendants"). He alleges that: Greenfield and Kasemir failed to maintain corporate formalities among the Defendants; their affairs are so entangled that consolidation would benefit all creditors; their funds were commingled; and inadequate financial records exist to sort out transfers made between and among Concepts and the Defendants.

Defendants move to dismiss Count I pursuant to Fed. R. Bankr. P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(6). Defendants assert that Count I fails to state a claim upon which relief may be granted. Their first argument is that non-debtor substantive consolidation – for none of the Defendants are debtors in cases under the Bankruptcy Code – is not an available remedy in the Seventh Circuit. Second, even if the remedy of non-debtor substantive consolidation is available, the allegations in the complaint fail to state a claim for relief.

Since this court holds that non-debtor substantive consolidation is not an available remedy in the Seventh Circuit, it need not analyze whether the allegations in this complaint rise to the level of stating a claim. Moreover, even if non-debtor substantive consolidation could be considered, it is not clear that every creditor of every Defendant received notice of the Trustee's request, and had an opportunity to be heard.

<u>Substantive Consolidation of Non-Debtors is Not an Available Remedy in the Seventh Circuit</u>

In Count I, the Trustee seeks to substantively consolidate Concepts with the Defendants. "Substantive consolidation is the merger of separate entities into one entity so that the assets and liabilities of both entities may be aggregated in order to effect a more equitable distribution of property among creditors." <u>Paloian v. LaSalle Bank N.A.</u> (<u>In re Doctors Hosp. of Hyde Park,</u>

5

Inc.), 507 B.R. 558, 706-07 (Bankr. N.D. Ill. 2013) (quotation omitted). It is "an extraordinary equitable remedy." Hardesty v. City Medical Nursing Center, LLC (In re Felix), 572 B.R. 892, 893 (Bankr. S.D. Ohio 2017).

One aspect that makes the equitable remedy of substantive consolidation so extraordinary is that there is no section of the Bankruptcy Code that provides for this relief.[6] Substantive consolidation is a judicially created remedy that finds its roots in Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215 (1941) (implicitly upholding a bankruptcy referee's decision to consolidate a non-debtor company into the bankruptcy estate of an individual).

Substantive consolidation "was created and developed entirely on considerations of equity." Kelley v. Opportunity Finance, LLC (In re Petters Company, Inc.), 550 B.R. 438, 447 (Bankr. D. Minn. 2016). It is considered a "rough justice remedy [that] should be rare and, in any event, one of last resort after considering and rejecting other remedies." In re Owens Corning, 419 F. 3rd 195, 211 (3rd Cir. 2005) (quotation omitted), cert. denied, 547 U.S. 1123 (2006). See In re Archdiocese of Milwaukee, 483 B.R. 693, 699 (Bankr. E.D. Wis. 2012) (the remedy should be used sparingly).

"There is a split of authority as to whether a bankruptcy court has the authority to substantively consolidate *non-debtors* assets and liabilities into a bankruptcy debtor's estate." SE Property Holdings, LLC v. Stewart (In re Stewart), 571 B.R. 460, 469 (Bankr. W.D. Okla. 2017) (emphasis in original).

> Some courts have granted motions to substantively consolidate debtors with non-debtors relying on § 105 of the Bankruptcy Code to "issue any order, process, or

---

[6] The only Code sections in which consolidation is mentioned "are § 302(b), which directs the court in a joint case filed by spouses to determine the extent, if any, to which the estates should be consolidated, and § 1123(a)(5)(C), which authorizes the inclusion in Chapter 11 plans of provisions for the 'merger or consolidation of the debtor with one or more persons.'" R2 Investments, LDC v. World Access, Inc. (In re World Access, Inc.), 301 B.R. 217, 272 n. 56 (Bankr. N.D. Ill. 2003). This proceeding involves neither spouses nor a Chapter 11 plan.

> judgment that is necessary or appropriate to carry out the provision of this title," to assert personal and subject matter jurisdiction over non-debtors, and to "ensure the equitable treatment of all creditors."
>
> Other courts reject the legal conclusion that § 105 grants bankruptcy courts the authority to substantively consolidate non-debtors, or, in other words, force entities to join the bankruptcy case whether they agree or not. These courts conclude that substantive consolidation is purely a bankruptcy remedy and does not extend to the assets and affairs of a non-debtor.

In re Pearlman, 462 B.R. 849, 854 (Bankr. M.D. Fla. 2012) (footnotes with string citations omitted).

The Circuit-level courts that have considered the question recognize a bankruptcy court's authority to impose the remedy. See Huntington National Bank v. Richardson (In re Cyberco Holdings, Inc.), 734 F. 3rd 432, 439 (6th Cir. 2013) (debtors); Owens Corning, 419 F. 3rd 195 (debtors and non-debtors); In re Bonham, 229 F. 3rd 750, 765 (9th Cir. 2000) (debtor and non-debtors); FDIC v. Colonial Realty Co., 966 F. 2nd 57 (2nd Cir. 1992) (debtors); In re Giller, 962 F. 2nd 796, 799 (8th Cir. 1992) (debtors); FDIC v. Hogan (Matter of Gulfco Investment Corp.), 593 F. 2nd 921, 928 (10th Cir. 1979) (debtors under the Bankruptcy Act).

But while substantive consolidation has been accepted in other Circuits, neither this court nor the parties could find a published decision from a panel of the Seventh Circuit in which the substantive consolidation of non-debtor third parties with a Chapter 7 debtor was permitted. Bankruptcy and district court level decisions in this Circuit have approached the idea cautiously. See Water Business Intern., LLC, v. KISS Packaging Systems, Inc., 2003 WL 21439844, *2 (N.D. Ill. June 20, 2003) (Party asked court to stay district court litigation pending a possible bankruptcy court motion for substantive consolidation. "Substantive consolidation of a non-debtor is not a universally accepted practice in bankruptcy courts. Rather, substantive consolidation in general is sparingly used.") (citations and quotation omitted); In re Geneva ANHX IV LLC, 496 B.R. 888, 901 (Bankr. C.D. Ill. 2013). (Without deciding whether the

Seventh Circuit would allow substantive consolidation of non-debtors, court found the motive for doing so was "improper and impermissible."); In re Archdiocese of Milwaukee, 483 B.R. 693, 700 (Bankr. E.D. Wis. 2012) (Following a hearing, court determined that the Official Committee of Unsecured Creditors did not state a colorable claim for substantive consolidation. Without deciding whether the court had authority to impose "the extraordinary remedy of substantive consolidation of a debtor with non-debtor entities," court determined that it was not warranted under those facts.); R2 Investments, LDC v. World Access, Inc. (In re World Access, Inc.), 301 B.R. 217 (Bankr. N.D. Ill. 2003) (Substantive consolidation of debtors was not warranted under the facts presented. The question of whether substantive consolidation may be extended to non-debtors was not raised or addressed.).

Would the Seventh Circuit follow its sister Circuits and hold that the equitable remedy of substantive consolidation of non-debtors is permitted? Our Circuit has shown a distinct lack of enthusiasm for a bankruptcy court's use of 11 U.S.C. § 105 and for creating rights based entirely on considerations of equity. See Sunbeam Products, Inc., v. Chicago American Mfg., LLC, 686 F. 3rd 372, 376 (7th Cir.) ("Rights depend . . . on what the Code provides rather than on notions of equity."), cert. denied, 568 U.S. 1076 (2012); Village of Rosemont v. Jaffe, 482 F. 3rd 926, 935-36 (7th Cir. 2007) ("Rosemont is mistaken if it thinks that § 105(a) is an independent source of rights.") (citing with approval In re Ludlow Hosp. Soc., Inc., 124 F. 3rd 22, 27 (1st Cir. 1997) ("section 105(a) affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes a roving commission to do equity")); In re Kmart Corp., 359 F. 3rd 866, 871 (7th Cir.) ("[T]he power conferred by § 105(a) is one to implement rather than override.") (citations omitted), cert. denied, 543 U.S. 986 (2004); Matter of Chicago, Milwaukee, St. Paul and Pacific R. Co., 791 F. 2nd 524, 528 (7th Cir. 1986) ("The fact that a proceeding is

equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness."). See also Geneva ANHX, 496 B.R. at 901 ("the Seventh Circuit takes a narrow view of a bankruptcy court's use of its equity powers").

On the other hand, a panel of the Seventh Circuit endorsed the exercise of a court's equitable powers when it serves one of the central objectives of the Bankruptcy Code. See In re Caesars Entertainment Operating Co., Inc., 808 F. 3rd 1186, 1188 (7th Cir. 2015) ("Though section 105(a) does not give the bankruptcy court carte blanche – the court cannot, for example, take an action prohibited by another provision of the Bankruptcy Code – it grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties.") (citations omitted).

In Caesars, rather than being limited by a "cramped interpretation of section 105(a)," the Circuit considered whether the relief sought would "enhance the prospects for a successful resolution of the disputes" in the bankruptcy case. If it would, granting the relief would be appropriate "since successful resolution of disputes arising in bankruptcy proceedings is one of the Code's central objectives." Id. at 1188-89.

Although Caesars is a recent decision, this court finds it to be an outlier in the universe of Seventh Circuit precedent concerning the use of equity in bankruptcy courts. As Professor Baird wrote (albeit before Caesars was issued), "Judge Easterbrook's opinion in In re Kmart, rejecting the doctrine of necessity, is a [more] typical example. See 359 F. 3rd 866, 871 (7th Cir.) (calling the doctrine of necessity "just a fancy name for a power to depart from the Code"), cert. denied, 125 S. Ct. 495 (2004)." Baird, Douglas G., "Substantive Consolidation Today," 47 B.C.L. Rev. 5, 14 n.37 (December 2005).

> Professor Baird continued:
>
> A debate over different approaches to substantive consolidation, however, should not obscure a more fundamental problem. One cannot be sure that an appellate court would allow substantive consolidation at all, particularly given that the Supreme Court has never adopted it. Far from providing a basis for substantive consolidation, cases such as <u>Sampsell</u> rely explicitly on fraudulent conveyance doctrine and thus underscore the need to find an explicit grant of power somewhere. Section 1123(a)(5)(C) of the Bankruptcy Code may be a possible source of support. This section provides that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall ... provide adequate means for the plan's implementation, such as ... merger or consolidation of the debtor with one or more persons."
>
> This section provides a thin reed for justifying substantive consolidation, however. The language "notwithstanding any otherwise applicable nonbankruptcy law" cannot sensibly be read as a broad grant of power. It cannot, for example, give the debtor the ability to merge itself with any third party it pleases, whether that party wants the merger or not. Even if the provision contemplates "consolidation" under Chapter 11 that could not have taken place elsewhere, nothing suggests that such a consolidation can compromise the otherwise valid claims of creditors of each entity. This section does not itself grant a substantive right.
>
> The absence of any clear statutory authority in the Bankruptcy Code throws into question the viability of the doctrine in an appellate court that focuses on the language of the Bankruptcy Code and refuses to look beyond it. Substantive consolidation is, as the term suggests, a <u>substantive</u> power. In the view of some courts, substantive powers such as this are permitted only to the extent that they grow out of substantive provisions of the Bankruptcy Code. Courts have stated again and again that substantive powers cannot be derived from section 105 of the Bankruptcy Code.

<u>Id.</u> at 19 (footnotes omitted) (emphasis in original).

For the reasons stated above, the court finds that, were it presented with the question, the Seventh Circuit would not allow substantive consolidation of a bankruptcy debtor with entities that are not under the protection of the Bankruptcy Code.

<u>Other Reasons Why Substantive Consolidation is Not Available as a Remedy</u>

There are other arguments against allowing the use of substantive consolidation. First, a procedure already exists for forcing an entity to enter into a bankruptcy case – the provisions for involuntary bankruptcy in 11 U.S.C. § 303. Indeed, Concepts' own bankruptcy case began as an

involuntary case. Using § 105 to accomplish the same end, without the protections and rules of § 303, based on a notion that the court is acting equitably, is to exceed the confines of the Code. "Substantively consolidating [the non-debtor] with the Debtors effectively forces the non-debtor into an involuntary bankruptcy proceeding without an opportunity for its creditors to participate. The Bankruptcy Code already provides a mechanism for filing an involuntary petition that protects the rights of the proposed debtor and its creditors. A bankruptcy court should not use its equitable powers to circumvent the Bankruptcy Code's requirements." Spradlin v. Beads and Seeds Inns, LLC (In re Howland), 518 B.R. 408, 414 (Bankr. E.D. Ky. 2014) (citations omitted), aff'd 579 B.R. 411 (E.D. Ky. 2016), aff'd 674 Fed. Appx. 482 (6th Cir. 2017). See Pearlman, 462 B.R. at 854 ("[A]llowing substantive consolidation of non-debtors under § 105(a) circumvents the stringent procedures and protections relating to involuntary bankruptcy cases imposed by § 303 of the Bankruptcy Code").[7]

A Minnesota bankruptcy court determined that it did not have the legal authority to substantive consolidate a debtor with non-debtor non-profit entities, because non-profit entities "are not subject to involuntary petitions under § 303(a)." In re Archdiocese of Saint Paul and Minneapolis, 553 B.R. 693, 701 (Bankr. D. Minn. 2016). Just last week, the Eighth Circuit affirmed this decision. "Section 303(a) prevents the use of § 105(a) to force truly independent non-profit entities into involuntary bankruptcy." Official Committee of Unsecured Creditors v.

---

[7] A number of courts that considered the "substantive consolidation is too much like an involuntary filing" argument have rejected it. See OMS, LLC v. Bank of America, N.A., 2015 WL 12712307, at *3 (C.D. Cal. Nov. 6, 2015) ("An involuntary bankruptcy involves totally different inquiries than substantive consolidation."); Kapila v. S&G Financial Services, LLC (In re S&G Financial Services of South Florida, Inc.), 451 B.R. 573, 582 (Bankr. S.D. Fla. 2011); Munford, Inc. v TOC Retail, Inc. (In re Munford, Inc.), 115 B.R. 390, 397 (Bankr. N.D. Ga. 1990). As the court noted in Manchester v. Kretchmar (In re Kretchmar), however, "authority for rejecting the view of an involuntary proceeding as a substitute for an action for substantive consolidation is the very fact that a large majority of courts, including those in the Tenth Circuit, permit the doctrine of substantive consolidation to be applied to a non-debtor without any discussion of § 303." 579 B.R. 924, 930 (Bankr. W.D. Okla. 2018). We have no such binding authority in the Seventh Circuit, therefore this fact has little weight in our analysis.

The Archdiocese of Saint Paul and Minneapolis (In re Archdiocese of Saint Paul and Minneapolis), ___ F. 3rd ___, 2018 WL 1954482, *6 (8th Cir. Apr. 26, 2018).[8]

Second, the Trustee has a similar remedy available under state law, and it is the basis for his claim in Count II: Alter Ego/Piercing Corporate Veil. "Illinois law permits veil piercing when two separate prongs are met: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." Wachovia Sec., LLC v. Banco Panamericano, Inc., 674 F. 3rd 743, 751–52 (7th Cir. 2012) (quotation omitted). In fact, at the beginning of Count II, the Trustee states that "[t]his Count is brought in the alternative to Count I (Substantive Consolidation)." Count II includes Greenfield, Kasemir and 1840 Pickwick as defendants; they are not named as defendants in Count I. If the Trustee prevails on Count II, each of those defendants will be liable on the claims filed against Concepts.

Finally, even if substantive consolidation of non-debtor entities is ultimately permitted in this Circuit, the complaint in this case does not allege whether non-debtor creditors received notice of the Trustee's claim for relief. "Courts have stated that, at minimum, due to the nature of substantive consolidation of debtor and non-debtor entities, notice must be provided to all creditors, and such creditors must have an opportunity to be heard." Kapila v. S&G Financial Services, LLC (In re S&G Financial Services of South Florida, Inc.), 451 B.R. 573, 585 (Bankr. S.D. Fla. 2011) (citations omitted).

---

[8] The panel left "for another day the issue of whether a non-profit non-debtor that is the alter ego, under state law, of the debtor, or has been formed as part of a fraudulent scheme, such as a Ponzi scheme, can be consolidated," since that question had not been argued. Archdiocese of Saint Paul and Minneapolis, 2018 WL 1954482 at *6.

12

"[T]he creditors of [the non-debtor defendant] will not be deprived of their non-bankruptcy expectations without notice and a hearing. Each [of the non-debtor's] creditor[s] must be served with a copy of the complaint so that each creditor will have the opportunity to participate in the adjudication of this issue." Mukamal v. Ark Capital Group, LLC (In re Kodsi), 2015 WL 222493, *2 (Bankr. S.D. Fla. Jan. 14, 2015). After all, "[t]he overriding equitable consideration is that consolidation will benefit all creditors, both those of the current debtors and those to be forcibly made debtors." Manchester v. Kretchmar (In re Kretchmar), 579 B.R. 924, 932 (Bankr. W.D. Okla. 2018) (emphasis in original).

> Although the focus of substantive consolidation should be on its effect on the general creditors of the entities, the complaint's allegations leave the existence of such creditors a mystery. Apparently, [plaintiff] did not even notify the unsecured creditors of Custom and Circle of its suit to consolidate.

Helena Chemical Co. v. Circle Land and Cattle Corp. (In re Circle Land and Cattle Corp.), 213 B.R. 870, 876 (Bankr. D. Kan. 1997).

The Bankruptcy Appellate Panel for the Ninth Circuit recently affirmed a trial court's decision to deny a motion for substantive consolidation on the grounds that "there is no evidence in the record showing that the creditors of the Non-Debtor Parties were served with notice of Trustee's motion thereby depriving them of an opportunity to be heard. In addition, Trustee did not identify those creditors or provide any evidence showing the nature of their debt. It is thus impossible to tell whether substantive consolidation would be equitable or fair to the absent and unidentified creditors of the Non-Debtor Parties." Leslie v. Mihranian (In re Mihranian), 2017 WL 6003345, *1 (B.A.P. 9th Cir. Dec. 4, 2017). The movant could not show that application of the doctrine was fair to creditors of the non-debtors "when he did not know who those creditors were or the nature of their debt." Id. at *5.

In Stewart, for example, the plaintiff alleged that substantive consolidation would "benefit all of the estates' creditors due to the existence of post-petition transfers of unencumbered property and continued fraudulent behavior in relation to creditors such as the above-described abuse of the corporate form to place assets out of the creditors' reach." 571 B.R. at 472. These allegations were deemed far too general. "It is not alleged who the affected creditors are, whether they are also creditors of the [Debtors] or the other Non-Debtors, whether the Non-Debtor creditors had any objection, consented or would consent to their debtors' post-petition transfers . . . or even if any of the other creditors had been made aware of [the] filing [of] this adversary." Id.

Our own Circuit reminded us (in the context of a securities-fraud receivership) "that in formulating equitable relief [,] a court must consider the effects of the relief on innocent third parties." SEC v. Wealth Mgmt. LLC, 628 F. 3rd 323, 331 (7th Cir. 2010) (footnote and quotation omitted). In this proceeding, those innocent third parties are the creditors of the non-debtor entities that the Trustee wishes to consolidate into Concepts.

Without specific allegations regarding who the affected creditors are, whether they are aware of the proceeding, and whether they have been given an opportunity to be heard, the court cannot analyze the effect of substantive consolidation on them. A footnote in a responsive brief is not an allegation, especially since it provides none of those specific details.[9]

---

[9] See Trustee's Consolidated Response at p. 18, n. 8 ("[T]he Trustee believes that if the relief requested in the Complaint is granted, creditors could be paid in full (as opposed to seeing no recovery if it is not), which demonstrates the extent to which substantive consolidation is beneficial for creditors. To the extent, however, that there is a concern about the impact of substantive consolidation on ordinary trade creditors of HoldCos (restaurants) that the Trustee is seeking to consolidate, the order could be crafted to give them priority or otherwise protect them...").

## CONCLUSION

The court has considered the arguments for and against allowing the Trustee to go forward with Count I, in which he seeks to substantively consolidate several non-debtors with Concepts. For the reasons stated above, the court holds that non-debtor substantive consolidation is not a remedy available to a court sitting in the Seventh Circuit. Moreover, even if non-debtor substantive consolidation could be considered, it is not clear that every creditor of the Defendants received notice of the Trustee's request. Therefore, the motions to dismiss will be granted as to Count I.

Date: May 3, 2018

_____
PAMELA S. HOLLIS
United States Bankruptcy Judge