## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 14 B 34232 |
| CONCEPTS AMERICA, INC., | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| BRIAN AUDETTE, not individually but as | ) | |
| Chapter 7 Trustee of the Estate of Concepts | ) | |
| America, Inc., | ) | |
| | ) | Adv. No. 16 A 691 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Pamela S. Hollis |
| TED KASEMIR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

This matter comes before the court on the motion of Lisa Kasemir, Ted Kasemir and

Draft Town Management, LLC (EOD 73) to dismiss the complaint ("Amended Complaint")

filed by Brian Audette, Chapter 7 Trustee of the Estate of Concepts America, Inc.  In this ruling,

the court analyzes the section of the motion that requests dismissal of Counts V, VI and VII

against Lisa and Draft Town.

Lisa and Draft Town argue that these counts should be dismissed because: (1) the Trustee

makes no allegations and requests no relief against Draft Town in Counts V and VI; and (2) the

Trustee cannot use Illinois state law to avoid and recover postpetition transfers from Draft Town

and Lisa.

Having reviewed the Amended Complaint, the motion to dismiss, and the memoranda

filed in support of and in response to the motion, the court grants the motion in part and denies

the motion in part.  The court will dismiss Count V as to Draft Town and Count VII as to Draft

Town and Lisa.  The motion is denied as to Count VI.  The remainder of the motion will be

continued to the next status date on the Amended Complaint.

## BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the

reasonable inferences drawn from them in the light most favorable to the plaintiff.  Reger Dev.,

LLC v. National City Bank, 592 F. 3rd 759, 763 (7th Cir.), cert. denied, 561 U.S. 1026 (2010).

For purposes of deciding this motion, the court accepts the following well-pleaded facts as true:[1]

Concepts America, Inc. ("Concepts") is the debtor in the underlying bankruptcy case.  It

is an Illinois corporation with its principal office and place of business at 1840 Pickwick Lane in

Glenview, Illinois.  Amended Complaint, EOD 44 at ¶ 12.[2]

Defendants Ted Kasemir ("Ted") and Roger Greenfield ("Greenfield") each own 50% of

the stock in Concepts. ¶ 12-14.  They were its sole officers as Secretary/Treasurer and President,

respectively. ¶ 48.  Concepts does not have, and has never had, a board of directors. ¶ 49.

Lisa Kasemir ("Lisa") is Ted's wife. ¶ 14.

Debtor Concepts served as a holding and management company for a group of

restaurants that was controlled, operated and either directly or indirectly owned by Greenfield

and Ted. ¶ 2.

Each restaurant was owned by its own holding company ("HoldCo"), with the HoldCos

either owned by Concepts (the "Concepts-Owned HoldCos") or by Ted and/or Greenfield (the

"Insider-Owned HoldCos"). ¶ 2, 42-43.

---

[1] There are many more allegations in the complaint; these are the allegations relevant to this Memorandum
Opinion.  More background can be found in: the Order Granting Motion to Dismiss Count XVII at EOD 183; the
Memorandum Opinion at EOD 201; and the Memorandum Opinion at EOD 221.
[2] All further citations in the format "¶__" are to the Amended Complaint at EOD 44.

Draft Town Management, LLC ("Draft Town") is an Illinois limited liability company owned by Ted with its principal place of business at 1840 Pickwick in Glenview, Illinois. Ted uses Draft Town to collect what he asserts are management fees from various HoldCos. ¶ 20.

Concepts was insolvent by at least the beginning of 2012, and has remained insolvent through the date of the filing of this complaint. ¶ 112.

Greenfield and Ted breached their fiduciary duties to Concepts by causing or allowing Concepts to engage in conduct that wrongfully manipulated corporate property to avoid paying creditor claims, and/or to benefit themselves and related entities at the expense of creditors. ¶¶ 197, 219.

Draft Town knowingly and substantially assisted Ted in his breaches of fiduciary duty by serving as a conduit for the extraction of management fees and other funds from certain HoldCos. ¶ 220.

Draft Town was regularly aware of its role in Ted's breaches of fiduciary duty because Ted is its owner and president. ¶ 222.

In Exhibit I to the Amended Complaint, the Trustee listed nine payments to Draft Town from Concepts and HoldCos:

| Payments to Draft Town from Concepts and HoldCos | | | |
|---|---|---|---|
| Date | Amount | Recipient | Paying Entity |
| 1/12/2016 | $6,919.37 | Draft Town | 5659 |
| 6/26/2015 | $7,896.96 | Draft Town | 5659 |
| 8/14/2015 | $6,748.98 | Draft Town | 5659 |
| 10/16/2015 | $7,488.36 | Draft Town | 5659 |
| 12/7/2015 | $18,500.00 | Draft Town | 5659 |
| 12/15/2015 | $7,364.40 | Draft Town | 5659 |
| 12/18/2015 | $7,013.79 | Draft Town | 5659 |
| 12/18/2015 | $6,477.41 | Draft Town | 5659 |
| 12/21/2015 | $8,556.39 | Draft Town | 5659 |
| TOTAL | $79,965.66 | | |

In that same exhibit, the Trustee listed twelve payments to Lisa from Concepts and

HoldCos:

| Payments to Lisa Kasemir from Concepts and HoldCos | | | |
|---|---|---|---|
| Date | Amount | Recipient | Paying Entity |
| 6/19/2015 | $5,250.00 | Lisa | 5659 |
| 5/27/2015 | $22,000.00 | Lisa | 0515 |
| 2/26/2016 | $4,986.13 | Lisa | 0515 |
| 2/19/2016 | $23,050.00 | Lisa | 0515 |
| 2/12/2016 | $9,000.00 | Lisa | 0515 |
| 12/9/2015 | $12,250.00 | Lisa | 0515 |
| 11/9/2015 | $10,000.00 | Lisa | 0515 |
| 11/27/2015 | $8,000.00 | Lisa | 0515 |
| 11/20/2015 | $6,800.00 | Lisa | 0515 |
| 11/13/2015 | $10,000.00 | Lisa | 0515 |
| 11/13/2015 | $10,000.00 | Lisa | 5667 |
| 1/29/2016 | $4,855.00 | Lisa | 0515 |
| TOTAL | $126,191.13 | | |

The Trustee used the term Post-Insolvency Payments for the first time in the caption of

Count VII. The Post-Insolvency Payments are identified in Exhibits G through I, so the

payments to Draft Town and Lisa in the tables above are included in that definition. ¶ 229.

Each Post-Insolvency Payment constituted a transfer of an interest in property of

Concepts or a Concepts alter ego. ¶ 230.[3]

Neither the Amended Complaint nor Exhibit I contain a definition for the "Paying Entity"

numbers 5659, 5667 or 0515. These may be numbers for accounts held by either Concepts or

HoldCos. ¶ 76; Ex. C. The court could not determine from the Amended Complaint whether

these particular numbers correspond to entities that the Trustee asks the court to find are an alter

ego of Concepts.

---

[3] In Count II of the Amended Complaint, the Trustee seeks a finding that certain defendants were an alter ego of
Concepts.

On September 19, 2014, an involuntary petition was filed against Concepts.  On

November 18, 2014, an order for relief was entered pursuant to Chapter 7 of the Bankruptcy

Code.

## LEGAL DISCUSSION

Draft Town and Lisa move to dismiss Counts V, VI and VII pursuant to Fed. R.  Bankr.

P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(6).  They argue that each count fails to state

a claim upon which relief may be granted.

As the Seventh Circuit recently instructed:

> In evaluating the sufficiency of the complaint, we construe it in the light most
> favorable to the nonmoving party, accept well-pleaded facts as true, and draw all
> inferences in [the nonmoving party's] favor. Although a party need not plead
> detailed factual allegations to survive a motion to dismiss, mere labels and
> conclusions or a formulaic recitation of the elements of a cause of action will not
> do.  Instead, [t]o survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is plausible on its
> face.

Berger, et al. v. National Collegiate Athletic Association, et al., 843 F. 3rd 285, 289-90 (7th Cir.

2016) (citations and quotations omitted).

Ashcroft v. Iqbal, 556 U.S. 662 (2009), and its predecessor, Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007), provide a more rigorous test for complaints than that previously

applied in this Circuit. The court will review this motion to dismiss under that stricter standard,

although it considers well-pleaded facts and the reasonable inferences drawn from them in the

light most favorable to the Trustee when determining whether the complaint states a plausible

claim to relief.  Reger Dev., 592 F. 3rd at 763.  Although well-pleaded facts are viewed in a

plaintiff's favor, allegations that are no more than conclusions are not presumed to be true for

purposes of deciding this motion to dismiss.

<u>Count V fails to state a claim against Draft Town</u>

The Trustee brought Count V against Greenfield, Ted, Draft Town and four other defendants. The basis of this claim for relief is that these defendants usurped a business opportunity belonging to Concepts.

> The corporate opportunity doctrine provides that a fiduciary cannot usurp a business opportunity that was developed through the use of corporate assets. The doctrine prohibits a corporation's fiduciary from taking advantage of business opportunities that are considered as "belonging" to the entity. A corporate opportunity is defined as a proposed activity that is reasonably incident to the corporation's present or prospective business and in which the corporation has the capacity to engage. When a corporate fiduciary wants to take advantage of a business opportunity that is within the company's line of business, the fiduciary must first disclose and tender the opportunity to the corporation before he or she takes advantage of it, notwithstanding the fiduciary's belief that the corporation is legally or financially incapable of taking advantage of the opportunity.

<u>Anest v. Audino</u>, 332 Ill. App. 3rd 468, 477–78 (Ill. App. Ct.) (citations and quotation omitted), <u>appeal denied</u>, 202 Ill. 2nd 598 (Ill. 2002).

In order for a claim for usurpation of corporate opportunity to survive Draft Town's motion to dismiss, the Trustee's complaint must plausibly allege that Draft Town: (1) was a fiduciary of Concepts; (2) took advantage of a business opportunity that belonged to Concepts; and (3) failed to disclose and tender the opportunity to Concepts before taking advantage of it.

There are no allegations in the complaint from which the court could plausibly infer that the Trustee stated a claim for usurpation of corporate opportunity against Draft Town. As Draft Town points out in its motion, there are almost no allegations against it at all in Count V. Although the Trustee includes at the beginning of Count V a boilerplate re-allegation of all preceding paragraphs, the only substantive mention of Draft Town in those preceding paragraphs is at paragraph 166:

> Nor does Ted's POC [proof of claim] account for the substantial funds he took <u>out</u> of Concepts and/or the HoldCos, which included at least 91 payments to Ted directly totaling $2,284,256.84, nine payments to Draft Town (which is 100%

6

owned by Ted) totaling $79,956.66 [and] twelve payments to Lisa totaling $126,191.13. All these payments were made when Concepts was insolvent.

Within Count V, the only mention of Draft Town is in paragraph 214:

> Roger and Ted have personally benefitted from this usurpation by, among other things, causing the Insider-Owned HoldCos to make: (a) direct payments to them and/or their spouses; (b) payments to Hopworks that benefitted Roger as its sole shareholder; and (c) payments to Draft Town that benefitted Ted as its sole shareholder.

Finally, the only mention of Draft Town in Count V's prayer for relief is the request for judgment against Greenfield and Ted for usurpation of corporate opportunities "in an amount to be determined at trial, but to include, at a minimum, the aggregate amount of all payments that any of the Remaining Insider-Owned HoldCos made to Roger or Ted, or to others (including Lisa, Jennifer, Draft Town or Hopworks) at Roger or Ted's direction."

Each of these statements concerns payments made to Draft Town. None include any allegations from which the court might infer that Draft Town was a fiduciary of Concepts, took advantage of a business opportunity that belonged to Concepts, and failed to disclose and tender the opportunity to Concepts before taking advantage of it. All of those elements are required to be alleged for a plaintiff to plausibly state a claim for usurpation of corporate opportunity.

The Trustee responds by asserting that "All Count V Defendants attempt to avoid liability for their role in usurping the Debtor's corporate opportunities by asserting, incorrectly, that per the Trustee's own allegations, the Debtor lacked the capacity to take advantage of these opportunities." Consolidated Response at p. 37. This is incorrect. Draft Town makes no such argument. It simply points out that there are no allegations against it that state a claim for usurpation of corporate opportunity.

To the extent there are any substantive allegations against Draft Town, they focus only on Draft Town's receipt of payments. The Trustee's argument that "the Defendants took these

opportunities for themselves and developed the new restaurants outside of Concepts" has no

connection to Draft Town. Consolidated Response at p. 39. According to the allegations in the

complaint, Draft Town took no opportunities and developed nothing.

The Trustee admitted that he "inadvertently failed" to name Draft Town in the prayer for

relief, a failure that he argues can "easily be remedied by amending the Complaint on its face."

Consolidated Response at p. 40. While motions for leave to amend a pleading are freely granted,

the court is at a loss as to what that amendment would be. What relief could be sought against

Draft Town in Count V, when there are no allegations to support a claim for usurpation of

corporate opportunities?

The Trustee argues that there is a basis for a claim against Draft Town, because it is

"alleged to have received substantial management fees from restaurants that should have been

owned by Concepts." Consolidated Response at 40.

The Trustee is correct that in paragraph 20 of the complaint, he alleged that Ted used

Draft Town to collect what he asserts were management fees from various HoldCos. This

allegation is wholly insufficient to support a claim against Draft Town for usurpation of

corporate opportunity. As stated above, there must be allegations from which the court can

plausibly infer that Draft Town was a fiduciary of Concepts who took advantage of a business

opportunity that belonged to Concepts and failed to disclose and tender the opportunity to

Concepts.

The Trustee's final argument is that Draft Town was actually Ted's alter ego. There are

no allegations in the complaint to support this argument beyond Draft Town being wholly owned

by Ted. "Illinois law permits veil piercing when two separate prongs are met: (1) there must be

such unity of interest and ownership that the separate personalities of the corporation and the

individual no longer exist; and (2) circumstances must be such that adherence to the fiction of

separate corporate existence would sanction a fraud or promote injustice." Wachovia Sec., LLC

v. Banco Panamericano, Inc., 674 F. 3rd 743, 751-52 (7th Cir. 2012) (quotation omitted).  It takes

much more than a sentence in a response to a motion to dismiss for the court to plausibly infer

that Draft Town is Ted's alter ego.

For the reasons stated above, the motion to dismiss is granted as to Draft Town's request

to dismiss Count V.

Count VI states a claim against Draft Town

The Trustee brought Count VI against Draft Town and four other defendants.  The basis

of this claim for relief is that these defendants aided and abetted Greenfield's and Ted's breach

of their fiduciary duties to Concepts.

In order to state a claim for aiding and abetting a breach of fiduciary duty, the plaintiff's

complaint must contain sufficient factual matter, accepted as true, to support the following

elements:

> (1) the party whom the defendant aids performed a wrongful act causing an
> injury, (2) the defendant was aware of his role when he provided the assistance,
> and (3) the defendant knowingly and substantially assisted the violation.

Hefferman v. Bass, 467 F. 3rd 596, 601 (7th Cir. 2006) (citation omitted).  In this count, the

wrongful act would be Ted's alleged breaches of his fiduciary duty to Concepts.

Draft Town points out that the Trustee failed to request any relief against Draft Town in

Count VI.  The Trustee admits that he "inadvertently failed" to name Draft Town in the prayer

for relief, a failure that he argues can "easily be corrected by amending the Complaint on its

face."  Consolidated Response at p. 44.

The Trustee's failure to request relief in Count VI is different from the same omission in

Count V, because in this count, it would not be futile to amend the prayer for relief.  The Trustee

alleged that Ted performed wrongful acts by breaching his fiduciary duties. He further alleged

that Draft Town substantially assisted Ted by acting as the conduit through which he distributed

money to himself when he breached his fiduciary duties. Because Ted is Draft Town's owner

and president, his <u>knowledge</u> of the breach is imputed to Draft Town. Therefore, the Trustee has

plausibly alleged that Draft Town was aware of its role and knowingly assisted. "What the

President and COO knew, [the corporation] knew." <u>Samaron Corp. v. United of Omaha Life Ins.</u>

<u>Co.</u>, 822 F. 3rd 361, 363 (7th Cir. 2016).

For the reasons stated above, Draft Town's motion to dismiss Count VI is denied.

<u>Count VII fails to state a claim against Draft Town and Lisa</u>

The Trustee brought Count VII against Greenfield, Ted, Hopworks, Draft Town and Lisa.

The basis of this claim for relief is that these defendants received payments from Concepts and

certain HoldCos after Concepts was insolvent. The Trustee seeks to avoid these payments as

fraudulent transfers under Illinois state law, and to recover them for the benefit of the estate. He

alleges that the payments were both actually fraudulent under 740 ILCS § 160/5(a)(1) as well as

constructively fraudulent under 740 ILCS § 160/5(a)(2), statutes that are applicable in

bankruptcy court through 11 U.S.C. § 544.

Pursuant to § 544(b), a "trustee may avoid any transfer of an interest of the debtor in

property . . . that is voidable under applicable law by a creditor holding an unsecured claim that

is allowable under section 502 of this title or that is not allowable only under section 502(e) of

this title."

The applicable law is found at 740 ILCS 160/5(a):

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the
obligation was incurred, if the debtor made the transfer or incurred the obligation:

10

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Draft Town and Lisa seek dismissal of this count on the grounds that all of the "Post-Insolvency Payments" made to them that are listed on Exhibit I of the Amended Complaint occurred post-petition. According to their argument, the Trustee cannot avoid post-petition transfers pursuant to section 544.

Draft Town and Lisa are correct. As Judge Brozman wrote over 30 years ago:

Although a literal reading of section 544(b) might seem to permit its use to avoid post-petition transfers, such an interpretation of the statute is inappropriate. . . .

When Congress enacted the Bankruptcy Reform Act of 1978, it provided the trustee with an arsenal of weapons designed to permit him to recover for the estate certain property transferred in fraud of creditors, 11 U.S.C. §§ 544 and 548, or which tended to prefer one creditor over others, 11 U.S.C. §§ 544, 545, 547 and 553. All of these avoiding powers, including that conferred by section 544(b), are circumscribed by the same statute of limitations, 11 U.S.C. § 546, that is, the earlier of two years after the appointment of a trustee or the time the case is closed or dismissed. In addition, Congress conferred upon the trustee by virtue of 11 U.S.C. § 549 the ability to avoid unauthorized post-petition transfers. Significantly, the avoidance of such transfers is governed by a separate statute of limitations keyed not to the appointment of the trustee but to the date of the transfer. 11 U.S.C. § 549(d).

Were section 544(b) meant to apply to post-petition transfers, it would have made little sense to limit the trustee to recovering those transfers, avoidable under non-bankruptcy law, which were made only within two years from the time of the trustee's appointment. A statute of limitations such as that contained in section 549 and linked to the making of the transfer would necessarily have been provided. Indeed, one leading commentator has described the section 546 statute of limitations as applying to only pre-petition transfers. 4 L. King, Collier on Bankruptcy, ¶ 549.03[4] at 549–15 (15th ed. 1986). And given the extraordinary

breadth of section 549, we are compelled to conclude that transfers such as those
which the Trustee seeks to avoid were intended to be embraced by section 549
and not by section 544.

This conclusion is wholly in keeping with prior law holding that the filing of a
bankruptcy petition effected a cleavage; the condition of the estate was assessed
as of that date, and the trustee's avoiding powers derivative from creditors, be
they hypothetical or actual, were limited to such rights as existed as of that date.

Eisenberg v. Bank of New York (In re Sattler's, Inc.), 73 B.R. 780, 790–91 (Bankr. S.D.N.Y.

1987) (citations and footnote omitted).   See Casey v. Rotenberg (In re Kenny G. Enterprises,

LLC), 512 B.R. 628, 638 (C.D. Cal. 2014) ("Since Congress likely did not intend for courts to

selectively apply § 544(b) in a results-driven manner, the Court finds most persuasive the courts

that have limited § 544 to prepetition transfers."); Rieser v. Dinsmore & Shohl, LLP (In re

Troutman Enterprises, Inc.), 356 B.R. 786 (Table), 2007 WL 205640, *9 (B.A.P. 6th Cir. Jan. 26,

2007) ("A clear majority of courts have interpreted the language in § 544 as applying only to

prepetition transfers of property.") (citations omitted); In re Wheeler, 2012 WL 5306001, *8

(Bankr. M.D. Tenn. Oct. 26, 2012) ("The Trustee's avoidance powers granted in § 544 apply

only to prepetition transfers of property.") (citation omitted); Farmer v. Autorics, Inc. (In re

Branam), 247 B.R. 440, 444 (Bankr. E.D. Tenn. 2000) ("Section 544 applies to pre-petition

transfers of property only.") (citations omitted).

  The Trustee argues that he is not relying, and does not need to rely, on Section 544.

Instead, he asserts that because Concepts has claims against the HoldCos who made the transfers,

Concepts (and therefore the Trustee) is a creditor who has standing to avoid those transfers.  "So

in other words, the Trustee does not need to rely on section 544's 'hypothetical creditor' standing

since the Debtor is itself a creditor of the transferor entities."  Consolidated Response at 47.

  Lisa and Draft Town describe this argument as "confusing" and point out that Trustee

provides no support for it.  Again, they are correct; the argument is flawed.  The first requirement

of 740 ILCS 160/5(a) is that the transfer which the creditor seeks to avoid must be made "by a debtor". If the transfers were made by entities other than Concepts – and the Trustee states in his response that they were – than the transfers were not made "by a debtor".

If the Trustee is asserting that the transfers were essentially made by Concepts because those entities are Concepts' alter ego, then his argument appears to be that Concepts is both the debtor who made the transfer as well as the creditor who has standing to avoid the transfer. The Trustee provides no legal support for this argument, and the court surmises that this is because none exists.

If the Trustee wishes to avoid a transfer of an interest of Concepts in property that is voidable under Illinois law by an unsecured creditor, he must use § 544(b) as the legal basis for his lawsuit. And § 544(b) limits his avoidance claims to prepetition transfers. Since all of the Post-Insolvency Transfers made to Draft Town and Lisa were made postpetition, the Trustee cannot state a claim against them for avoidance of fraudulent transfers.

The court finds that the Trustee failed to a state a claim for relief against Draft Town and Lisa in Count VII. The motion to dismiss will be granted as to Count VII.

## CONCLUSION

For all of the reasons stated above, the court grants the motion in part and denies the motion in part. The court will dismiss Count V as to Draft Town and Count VII as to Draft Town and Lisa. The motion is denied as to Count VI. The remainder of the motion will be continued to the next status date on the Amended Complaint.

Date: _6/14/2018_                        _____

PAMELA S. HOLLIS
United States Bankruptcy Judge

13