# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 14 B 34232 |
| CONCEPTS AMERICA, INC., | ) |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| | ) |
| BRIAN AUDETTE, not individually but as Chapter 7 Trustee of the Estate of Concepts America, Inc., | ) ) ) |
| | ) Adv. No. 16 A 691 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Judge Pamela S. Hollis |
| TED KASEMIR, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the court on the motion of Rodd Goldman and One North, Inc. (EOD 74) to dismiss the complaint ("Amended Complaint") filed by Brian Audette, Chapter 7 Trustee of the Estate of Concepts America, Inc. In this ruling, the court addresses the count-specific aspects of the motion, and not the request to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 8 and 10.

Goldman and One North argue that: (1) Counts I and II should be dismissed as to One North; and (2) Counts IV, IX and XI should be dismissed as to Goldman.

Having reviewed the Amended Complaint, the motion to dismiss, and the memoranda filed in support of and in response to the motion, the court: (1) denies the motion as moot as to Count I; (2) denies the motion as to Count II, (3) denies the motion as to Count IV; (4) denies the motion as to Count IX; and (5) grants the motion as to Count XI.

## BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. Reger Dev., LLC v. National City Bank, 592 F. 3rd 759, 763 (7th Cir.), cert. denied, 561 U.S. 1026 (2010). For purposes of deciding this motion, the court accepts the following well-pleaded facts as true:[1]

Concepts America, Inc. ("Concepts") is the debtor in the underlying bankruptcy case. It is an Illinois corporation with its principal office and place of business at 1840 Pickwick Lane in Glenview, Illinois. Amended Complaint, EOD 44 at ¶ 12.[2]

Defendants Ted Kasemir ("Kasemir") and Roger Greenfield ("Greenfield") each own 50% of the stock in Concepts. ¶ 12-14. They were its sole officers as Secretary/Treasurer and President, respectively. ¶ 48. Concepts does not have, and has never had, a board of directors. ¶ 49.

Defendant Rodd Goldman ("Goldman") is an individual residing in Skokie, Illinois. He was the Chief Financial Officer for Concepts and the other entities within the Restaurant Group until early 2014, and claims to be the owner of One North, Inc. ¶ 15.

Defendant One North, Inc. ("One North") is an Illinois corporation with its principal place of business in Chicago, Illinois. One North's primary asset is a "One North Kitchen & Bar" restaurant located at 1 North Wacker Drive in Chicago. ¶ 26.

---

[1] There are many more allegations in the complaint; these are the allegations relevant to this Memorandum Opinion. More background can be found in: the Order Granting Motion to Dismiss Count XVII at EOD 183; the Memorandum Opinion at EOD 201; the Memorandum Opinion at EOD 221; and the Memorandum Opinion at EOD 234.

[2] All further citations in the format "¶__" are to the Amended Complaint at EOD 44.

Debtor Concepts served as a holding and management company for a group of restaurants that was controlled, operated and either directly or indirectly owned by Greenfield and Kasemir. ¶ 2.

Each restaurant was owned by its own holding company ("HoldCo"), with the HoldCos either owned by Concepts (the "Concepts-Owned HoldCos") or by Kasemir and/or Greenfield (the "Insider-Owned HoldCos"). ¶ 2, 42-43.

The Trustee uses the term the "Restaurant Group" to refer collectively to Concepts, all HoldCos for which Concepts provided common services, and two other entities. ¶44. This definition includes One North.

One North is a HoldCo originally owned by Concepts. The Trustee alleges that the current owner of One North is Concepts Restaurant Holding, Inc., but that Goldman purports to have purchased the stock of One North. Goldman is currently in possession of and is operating One North. ¶ 42.

Through Greenfield, Kasemir and its employees, Concepts helped develop new restaurants, provided legal, financial, operational and managerial services to the restaurants, and provided cash management services to all the Restaurant Group entities. ¶ 50. There were no management agreements between Concepts and any of the HoldCos. ¶ 51.

Concepts also guaranteed leases for the HoldCos. It received no compensation or reimbursement for any of the services it rendered, including provision of the guarantees. ¶ 50-51.

Greenfield and Kasemir operated the Restaurant Group as a single economic unit. ¶ 52. Since the HoldCos had no historical financials, landlords requested financial statements from Concepts prior to entering leases and agreeing to provide tenant improvement funds. ¶ 56.

Concepts provided landlords with consolidated financials that were often accompanied by a cover letter on the letterhead of "Goldman Associates," an "Accounting, Tax and Financial Management" firm. ¶ 56-57. The consolidated financial statements falsely suggested that Concepts owned assets that were producing tens of millions of dollars more in revenue than they actually were. ¶ 62.

In September 2010, Kasemir signed a Customer Processing Agreement with WorldPay, in which Concepts was defined as the "Customer". The agreement set forth certain assumptions, including an annual credit card volume of $38,000,000 from 19 active locations. ¶ 64.

Four months later, Greenfield signed an amendment to the agreement on behalf of Concepts. The definition of Customer was changed from Concepts alone to Concepts and 23 restaurants, including One North. ¶ 65.

In 2012, Goldman signed amendments to the agreement on behalf of Concepts and added other restaurants to the customer list. For each HoldCo that was added, Greenfield, Kasemir or Goldman would direct WorldPay to deposit the credit card receipts into a designated account. ¶ 67.

From March 2011 through mid-2013, WorldPay deposited most credit card receipts from HoldCo Customers into one of two commingled bank accounts: an account maintained by Concepts and an account maintained by Prime Bar America. ¶ 68. HoldCo ownership, and even restaurant type, was disregarded for purposes of determining where HoldCo revenue would be deposited. ¶ 69. Concepts received credit card deposits from at least 11 different HoldCos. ¶ 71.

Funds were also regularly and extensively commingled between these two accounts. ¶ 72. Goldman admitted that the extensive transfers between the accounts were made as needed to pay bills. ¶ 73.

During the one year period between March 2014 and March 2015, Concepts and other HoldCos engaged in more than 3,000 transfers among 17 accounts held by either Concepts or other HoldCos, with an aggregate value of more than $14,000,000. ¶ 76.

On February 21, 2013, two new Illinois LLCs were formed listing Greenfield as the incorporator: (a) Concepts Restaurant Holding ("Holding"); and (b) Concepts Restaurant Management ("Concepts RM"). Concepts is the 100% member of Holding. Greenfield and Kasemir each own 50% of Concepts RM. Concepts RM is the manager of Holding, and Concepts RM is managed by Greenfield. ¶ 122.

Holdings' operating agreement provided that if any of its members were "dissociated", its manager (Concepts RM) could buy a 1% interest. ¶ 124.

Under the Illinois Limited Liability Company Act, "dissociation" occurs if, <u>inter alia</u>, a member becomes a debtor in bankruptcy. 805 ILCS 180/35-45(7)(A). Upon dissociation, a member loses the right to participate in management. 805 ILCS 180/35-55(a)(1).

As of March 3, 2013, Concepts-owned HoldCos included: (1) 111 Wacker Restaurant Corp.; (2) Bluepoint Hollywood, Inc.; (3) 33 Restaurant, Inc.; (4) Midtown Kitchen & Bar, Inc.; and (5) One North (the "Five Subsidiaries"). Each of these Concepts-owned corporations owned one restaurant. ¶ 121.

The next day, Concepts transferred 100% of its shares in the Five Subsidiaries to Holding (the "Subsidiary Transfer"). Concepts received no consideration in return. ¶ 126.

On July 26, 2013, Goldman signed a "Stock Purchase Agreement" with One North. One North purported to transfer 100% of its own capital stock to Goldman, even though Holding had received the same shares four months earlier. ¶ 132. The consideration Goldman furnished was "payment of all liabilities [of One North] including, but not limited to, past due rent, past due taxes, all payables totaling approximately ONE HUNDRED THOUSAND ($100,000.00) DOLLARS." ¶ 133.

Concepts was insolvent by at least the beginning of 2012, and has remained insolvent through the date of the filing of this complaint. ¶ 112.

On September 19, 2014, an involuntary petition was filed against Concepts. On November 18, 2014, an order for relief was entered pursuant to Chapter 7 of the Bankruptcy Code.

## LEGAL DISCUSSION

One North and Goldman move to dismiss Counts I, II, IV, IX and XI of the Amended Complaint pursuant to Fed. R. Bankr. P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(6). They argue that each count fails to state a claim upon which relief may be granted.

As the Seventh Circuit recently instructed:

> In evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor. Although a party need not plead detailed factual allegations to survive a motion to dismiss, mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Instead, [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

<u>Berger, et al. v. National Collegiate Athletic Association, et al.</u>, 843 F. 3rd 285, 289-90 (7th Cir. 2016) (citations and quotations omitted).

6

Ashcroft v. Iqbal, 556 U.S. 662 (2009), and its predecessor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), provide a more rigorous test for complaints than that previously applied in this Circuit. The court will review this motion to dismiss under that stricter standard, although it considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the Trustee when determining whether the complaint states a plausible claim to relief. Reger Dev., 592 F. 3rd at 763. Although well-pleaded facts are viewed in a plaintiff's favor, allegations that are no more than conclusions are not presumed to be true for purposes of deciding this motion to dismiss.

One North's request to dismiss Count I is denied as moot.

Pursuant to the Memorandum Opinion and Order entered May 3, 2018, this court found that substantive consolidation of non-debtors is not permitted in the Seventh Circuit, and dismissed Count I. The motion is denied as moot with regard to Count I.

One North's request to dismiss Count II is denied.

Pursuant to Count II, the Trustee seeks a finding that various non-debtor entities, including One North, are alter egos of Concepts. One North argues that the complaint alleges no specific act or conduct on its part, so that the complaint fails to state sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

But applicable law does not require a specific act by One North. "[I]n order to pierce the veil between a parent and a subsidiary, a plaintiff must make a substantial showing that one corporation is really a dummy or sham for another." APS Sports Collectibles, Inc. v. Sports Time, Inc., 299 F.3rd 624, 631 (7th Cir. 2002) (quotation omitted). "Additionally, the legal separation of two distinct corporate entities may only be disregarded when the circumstances are such that adherence to the fiction of separate corporate existence would sanction a fraud or

7

promote injustice." Jones v. Countrywide Home Loans, Inc., 2010 WL 551418, *3 (N.D. Ill. Feb. 11, 2010) (quotation omitted).

Illinois courts look at several different factors when determining whether the separate existence of a corporation should be disregarded, "including: failure to comply with corporate formalities or maintain adequate corporate records; commingling of funds or assets; undercapitalization; failure to maintain an arms-length relationship with related entities; non-functioning of the other officers or directors; diversion of assets from the corporation to the officer to the detriment of other creditors; and whether the corporation is a 'mere façade' for dominant shareholders." SMS Assist L.L.C. v. East Coast Lot & Pavement Maint. Corp., 913 F. Supp. 2nd 612, 631 (N.D. Ill. 2012) (citations omitted).

At this time, the court need not determine that One North is an *alter ego* of Concepts, only whether the Trustee alleged sufficient facts to state a plausible claim to relief under the standard above. The Trustee has done so, as the complaint contains allegations regarding failure to maintain an arms-length relationship with related entities as well as commingling of funds.

The Trustee alleged that Greenfield and Kasemir operated the Restaurant Group as a single economic unit. Landlords requested financial statements from Concepts prior to entering leases with or providing tenant improvement funds to the HoldCos – a group that includes One North. Concepts helped develop new restaurants, provided legal, financial, operational and managerial services to the restaurants, and provided cash management services to all the Restaurant Group entities, even though there were no management agreements between Concepts and any of the HoldCos. Concepts also guaranteed leases for the HoldCos. It received no compensation or reimbursement for any of the services it rendered, including provision of the guarantees.

Although the Trustee does not specifically mention One North in the allegations that support the summary above, One North is a HoldCo. At the motion to dismiss stage, it is reasonable for the court to infer that One North is among the entities for which Concepts provided legal, financial, operational, managerial and cash management services, as well as a guarantee, at no charge. These allegations could eventually support a finding that One North and Concepts failed to maintain an arms-length relationship.

Additionally, most of the revenue from the restaurants was deposited into one of two bank accounts, regardless of whether Greenfield, Kasemir or Concepts owned that restaurant's HoldCo. Money from those two accounts then frequently moved between other commingled accounts maintained by Concepts.

Although the complaint does not specifically allege that revenue from One North's restaurant was deposited in these commingled bank accounts, on a motion to dismiss the court is directed to draw all inferences in the nonmoving party's favor. Based on the allegations that One North was one of the HoldCo Customers in the amended WorldPay credit card processing agreement, and that WorldPay deposited most HoldCo credit card receipts into one of those two commingled bank accounts, the court infers that One North's receipts were included in those deposits.

Since the Trustee has alleged sufficient factual matter to state a claim to relief that is plausible, the motion to dismiss is denied with regard to Count II.

Goldman's request to dismiss Count IV is denied.

Pursuant to Count IV, the Trustee seeks a finding that Goldman breached his fiduciary duty to Concepts. "To establish a breach of fiduciary duty under Illinois law a plaintiff must allege (1) a fiduciary relationship; (2) a breach of the fiduciary duty; and (3) injury resulting

from the breach." Lubrizol Corp. v. Olympic Oil Ltd., 2018 WL 1993377, *4 (N.D. Ill. April 27, 2018) (citations omitted).

The Trustee alleged that Goldman was the Chief Financial Officer of Concepts. As the CFO, he owed a fiduciary duty to it. See Brown v. Tenney, 125 Ill. 2nd 348, 360 (Ill. 1988) ("Illinois law has long recognized that corporate officers and directors occupy a fiduciary relationship towards their corporation. . .") (citation omitted).

Did the Trustee sufficiently allege that Goldman breached his fiduciary duty? Goldman argues that the complaint fails to state a claim against him because the Trustee alleges nothing but conclusions, and conclusory allegations are "not entitled to be assumed true." Iqbal, 556 U.S. at 681 (citation omitted).

Count IV contains three specific examples of Goldman's alleged breaches of fiduciary duty. First, Goldman provided a cover letter on "Goldman Associates" letterhead when Concepts sent out financial documents to landlords. The Trustee alleges that distributing the financial documents with this "Goldman Associates" cover letter gave the misleading impression that the documents had been prepared by independent professionals. Goldman's letter therefore "harmed Concepts by causing it to incur massive lease guaranty obligations that it could not satisfy, including for entities it did not own." Amended Complaint ¶ 202.

Even if the cover letter was intended to create the appearance that the financial documents had been reviewed and/or prepared by an outside firm rather than Goldman as CFO – an allegation that is merely a conclusion, and therefore not assumed to be true – it is unclear how this is a breach of Goldman's fiduciary duty to Concepts. Indeed, the letter states there was no independent review of Concepts' financial statements.

> We have compiled the accompanying statement of financial position of Concepts America, Inc., as of December 31, 2009 and the related statements of income for

> the period then ended, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.
>
> A compilation is limited to presenting in the form of financial statements information that is the representation of management. We have not audited or reviewed the accompanying financial statements and accordingly, do not express an opinion or any other form of assurance on them.
>
> Management has elected to omit the statement of cash flows and substantially all of the disclosures required by generally accepted accounting principles. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the Company's financial position, results of operations, and its cash flows. Accordingly, these financial statements are not designed for those who are not informed about such matters.

Amended Complaint, Ex. A.

Even making all reasonable inferences in favor of the Trustee, as the court is required to do when reviewing a motion to dismiss, it is too far of a stretch to say that the Trustee plausibly alleged that this cover letter caused Concepts to incur obligations it could not meet, and that a claim for breach of fiduciary duty can be maintained against Goldman for writing it.

The court comes to the same conclusion with regard to the Trustee's claim that Goldman breached his fiduciary duty by purchasing the stock of One North without any marketing or valuation having been conducted. Although the Trustee does not say so, the court assumes that he is arguing this is a breach of Goldman's duty to act in good faith with regard to his company's assets.

With no allegations in the Amended Complaint regarding the value of One North, its assets, profitability or balance sheet, the court has no idea whether Goldman breached his fiduciary duty to Concepts when he took the stock in exchange for $100,000 in debt. Perhaps One North was a losing proposition, and Goldman did Concepts a favor by taking it over. Or perhaps Goldman got a bargain by virtue of his position as an executive officer of Concepts.

Without more, the court cannot find that the Trustee plausibly alleged Goldman breached his fiduciary duty to Concepts by purporting to buy the stock of One North.

Although the above allegations do not support a claim for breach of fiduciary duty, the Trustee also alleged that Goldman breached his fiduciary duty by allowing Concepts' funds to be commingled. Goldman argues that this is an "empty conclusion." Motion to Dismiss at p. 8.

But the Amended Complaint contains specific allegations regarding Goldman's involvement in the commingling of Concepts and HoldCo revenues.

In 2012, Goldman signed amendments to the WorldPay credit card processing agreement on behalf of Concepts and added other restaurants to the customer list. For each HoldCo that was added, Greenfield, Kasemir <u>or Goldman</u> would direct WorldPay to deposit the credit card receipts into a designated account. Who owned the HoldCo was irrelevant for purposes of determining where its revenue would be deposited.

From March 2011 through mid-2013, WorldPay deposited most credit card receipts from HoldCo Customers into one of two commingled bank accounts: an account maintained by Concepts and an account maintained by Prime Bar America. Concepts received credit card deposits from at least 11 different HoldCos.

Funds were also regularly and extensively commingled between these two accounts. <u>Goldman admitted</u> that the extensive transfers between the accounts were made as needed to pay bills.

During the one year period between March 2014 and March 2015, Concepts and other HoldCos engaged in more than 3,000 transfers among 17 accounts held by either Concepts or other HoldCos, with an aggregate value of more than $14,000,000. Even if Greenfield and Kasemir "controlled everything the debtor and the other non-debtor entities did," as Goldman

wrote in his reply, Goldman was Concepts' CFO. It is plausible at this stage to infer that as the CFO, Goldman caused or allowed the commingling. If he did so, then he breached his fiduciary duty to Concepts. See TMF Tool Co., Inc. v. Siebengartner, 899 F. 2nd 584, 589 (7th Cir. 1990) (treasurer breached fiduciary duty to corporation by commingling funds loaned to his employer with his own money).

A claim for breach of fiduciary duty also requires that the corporation was injured by the breach. Goldman argues that the Trustee has not and cannot allege that Concepts was harmed by anything he did.

But as the Trustee points out, he alleged that the commingling "deprived [Concepts] of revenue, forced it to use the revenue it did receive for Defendants' benefit, and ultimately left Concepts bankrupt." Response to Motion to Dismiss, pp. 31-32. Receipts that came in to HoldCos owned by Concepts might end up in another entity's bank account. In the meantime, with the revenue it did receive, Concepts helped develop new restaurants, provided legal, financial, operational and managerial services, guaranteed leases and provided cash management services to all the Restaurant Group entities. It received no compensation or reimbursement for any of these services. After operating in this manner, Concepts was insolvent by at least the beginning of 2012. In light of all of these allegations, the Trustee has pled sufficient factual matter for the court to find it plausible that he can prove at trial that Concepts was injured by the commingling.

The motion to dismiss is denied with regard to Count IV.

Goldman's request to dismiss Count IX is denied.

Pursuant to Count IX, the Trustee seeks to avoid and recover the transfer of One North and the One North stock to Holding as part of the Subsidiary Transfers. The Trustee alleges that

it was a fraudulent transfer pursuant to 740 ILCS § 160/5(a)(1), as incorporated by 11 U.S.C. § 544(b)(1). Count IX is brought against Goldman because, to the extent the transfer of the One North stock to him had any effect, Goldman is a subsequent transferee from whom the stock or its value can be recovered.

Goldman argues that the Trustee's claim that Kasemir and Greenfield operated the Restaurant Group as a single enterprise, and that One North was an alter ego of Concepts, conflicts with his theory that Holding, and not Concepts or One North, owned the One North stock when Goldman purchased it.

In response, the Trustee acknowledges that Count IX is brought in the alternative to Counts I and II. Although Count I has been dismissed, Count II survives. Even if Count II and Count IX are inconsistent with each other, the Federal Rules of Civil Procedure allow complaints to contain inconsistent claims. See Fed. R. Civ. P. 8(d)(3) ("**Inconsistent Claims or Defenses.** A party may state as many separate claims or defenses as it has, regardless of consistency."), made applicable by Fed. R. Bankr. P. 7008.

Therefore, the motion to dismiss is denied with regard to Count IX.[3]

Goldman's request to dismiss Count XI is granted.

Pursuant to Count XI, the Trustee seeks a finding that Goldman engaged in a conspiracy with Greenfield, Kasemir, attorney R. Kymn Harp ("Harp") and Harp's law firm Robbins, Salomon and Patt, Ltd. ("RSP") to "defraud and breach fiduciary duties owed to Concepts and its creditors. Specifically, the Conspirators [Greenfield, Kasemir, Goldman, Harp and RSP]

---

[3] In his reply memorandum of law, Goldman briefly raises a second argument, that the Trustee's claim to avoid the transfer of One North stock to him relies upon the allegation that the consideration he paid was not of reasonably equivalent value. He argues that payment of the obligations of another is legally valid consideration. This argument will not be considered. "[I]t is well-established that arguments raised for the first time in the reply brief are waived." Mendez v. Perla Dental, 646 F. 3rd 420, 423-24 (7th Cir. 2011) (citations omitted).

knowingly agreed to unlawfully strip assets from Concepts, hinder and delay Concepts' creditors, and enrich themselves to the detriment of Concepts and its creditors at a time they knew Concepts to be insolvent." Amended Complaint, ¶ 259-260. The allegedly tortious acts include the Subsidiary Transfer and restructuring of certain Restaurant Group entities, the One North stock sale, and execution of a document by which Concepts RM took a 1% interest in Holding.

To survive a motion to dismiss, a claim for civil conspiracy must contain sufficient factual matter, accepted as true, to support the inference that there was:

> (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.

Turner v. Hirschbach Motor Lines, 854 F. 3rd 926, 930 (7th Cir. 2017) (quotation omitted).

Among the several allegedly tortious acts mentioned, the only act in which Goldman is alleged to have participated is the One North stock sale. In his response, the Trustee argues that Goldman benefitted from the conspiracy to commit fraud by receiving the stock interest in One North for no consideration, a transaction that harmed Concepts.

The Trustee has not alleged that this stock sale was the result of an agreement between Goldman and one of the other co-conspirators for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means. Nor has he alleged that the sale – the only one of the schemes in which Goldman is alleged to have participated – involved at least one tortious act in furtherance of this agreement that caused injury to Concepts.

The complaint fails to state a claim against Goldman for civil conspiracy to commit fraud. The motion to dismiss is granted with regard to Count XI.

## CONCLUSION

For all of the reasons stated above, the motion to dismiss is: (1) denied as moot as to Count I; (2) denied as to Count II; (3) denied as to Count IV; (4) denied as to Count IX; and (5) granted as to Count XI.

Date: July 12, 2018

　　　　　　　　　　　　　　　　／s／ Pamela S. Hollis
PAMELA S. HOLLIS
United States Bankruptcy Judge