**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | |
| CONCEPTS AMERICA, INC., | Case No. 14 B 34232 |
| Debtor. | Chapter 7 |
| | |
| BRIAN AUDETTE, not individually but as Chapter 7 Trustee of the Estate of Concepts America, Inc., | |
| Plaintiff, | Adv. No. 16 A 691 |
| v. | Judge Pamela S. Hollis |
| TED KASEMIR, et al., | |
| Defendants. | |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Defendant Jennifer Greenfield (EOD 78) to dismiss the complaint filed by Brian Audette, Chapter 7 Trustee of the Estate of Concepts America, Inc. In this ruling, the court resolves her request to dismiss Count VI for failure to state a claim. Count VI is brought under the theory that Jennifer Greenfield aided and abetted Roger Greenfield's breach of fiduciary duty.[1]

Having reviewed the Third Amended Complaint, the motion to dismiss, and the memoranda filed in support of and in response to the motion, the court denies the motion to dismiss.

---

[1] The request to dismiss the Amended Complaint under Fed. R. Civ. P. 8 and 10 has been withdrawn in the Agreed Order Granting Leave to File Third Amended Complaint and Partially Resolving Certain Motions to Dismiss at EOD 236. Additionally, although the motion to dismiss was originally filed in response to the Second Amended Complaint, the Agreed Order deemed it to be filed with respect to the Third Amended Complaint.

## BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. Reger Dev., LLC v. National City Bank, 592 F. 3rd 759, 763 (7th Cir.), cert. denied, 561 U.S. 1026 (2010). For purposes of deciding this motion, the court accepts the following well-pleaded facts as true:[2]

Concepts America, Inc. ("Concepts") is the debtor in the underlying bankruptcy case. It is an Illinois corporation with its principal office and place of business at 1840 Pickwick Lane in Glenview, Illinois. Third Amended Complaint, EOD 237 at ¶ 12.[3]

All Concepts employees worked at the Pickwick Lane property unless they were traveling or working from home. Concepts leased the Pickwick Lane property for $10,000 per month. ¶ 96 and 98.

Defendants Ted Kasemir ("Kasemir") and Roger Greenfield ("Roger") each own 50% of the stock in Concepts. ¶ 12-14. They were its sole officers as Secretary/Treasurer and President, respectively. ¶ 48. Concepts does not have, and has never had, a board of directors. ¶ 49.

Defendant Jennifer Greenfield ("Jennifer") is an individual residing in Illinois. She is Roger's wife. ¶ 13.

Concepts served as a holding and management company for a group of restaurants that was controlled, operated and either directly or indirectly owned by Roger and Kasemir. ¶ 2.

---

[2] There are many more allegations in the complaint; these are the allegations relevant to this Memorandum Opinion. More background can be found in: the Order Granting Motion to Dismiss Count XVII at EOD 183; the Memorandum Opinion at EOD 201; the Memorandum Opinion at EOD 221; the Memorandum Opinion at EOD 234; the Memorandum Opinion at EOD 248 and the Memorandum Opinion at EOD 309.
[3] All further citations in the format "¶__" are to the Third Amended Complaint at EOD 237.

Each restaurant was owned by its own holding company ("HoldCo"), with the HoldCos either owned by Concepts (the "Concepts-Owned HoldCos") or by Kasemir and/or Roger (the "Insider-Owned HoldCos"). ¶ 2, 42-43.

The Trustee uses the term the "Restaurant Group" to refer collectively to Concepts, all HoldCos for which Concepts provided common services, as well as three other entities: 1840 Pickwick, LLC (whose main asset is the Pickwick Lane property); Restaurants-America Consulting Group, Inc., d/b/a Restaurants America ("RA Consulting"); and Restaurants-America Trademark, Inc. ("RA Trademark"). ¶ 29, 44. Roger and Kasemir operated the Restaurant Group as a single economic unit. ¶ 52.

Through Roger, Kasemir and its employees, Concepts helped develop new restaurants, provided legal, financial, operational and managerial services to the restaurants, and provided cash management services to all the Restaurant Group entities. ¶ 50. There were no management agreements between Concepts and any of the HoldCos. ¶ 51.

Concepts also guaranteed leases for the HoldCos. It received no compensation or reimbursement for any of the services it rendered, including provision of the guarantees. ¶ 50-51.

Defendant Rachel Dennis is an individual residing in Illinois. She was general counsel for Concepts as well as the HoldCos, 1840 Pickwick, RA Consulting and RA Trademark. ¶ 16.

Defendant R Consulting is an Illinois corporation owned by Dennis with its principal place of business in Oak Park, Illinois. ¶ 17.

Roger, Jennifer, Kasemir and Kasemir's wife commingled their own funds with those of Concepts and the Restaurant Group entities, taking money – totaling millions of dollars – out of

3

the entities when possible and putting it back in when necessary to pay expenses (or just paying those expenses directly). ¶ 84.

Roger and Kasemir frequently paid contractors personally, and then were reimbursed by Concepts, often for projects not owned by Concepts or its subsidiaries. Roger and Kasemir treated Concepts and the other Restaurant Group entities as one company of which they each owned half. ¶ 4.

Concepts employees also provided personal services for Roger and Jennifer. For example, one employee prepared their personal tax returns on an annual basis. Roger did not pay the employee separately for this work or reimburse Concepts. ¶ 86.

By January 2012, Concepts was bouncing checks. Over the course of 2012, well over 100 checks from one of its accounts were returned for non-sufficient funds. ¶ 109.

Lease defaults by HoldCos were also beginning to mount in 2012, and landlords were increasingly looking to Concepts to satisfy its guaranty obligations. Roger and Kasemir knew that additional locations – all of which had Concepts-guaranteed leases – were unprofitable and likely to default in 2013. ¶ 110.

Kasemir knew Concepts was unable to pay its bills as they came due in 2012 and that its financial condition continued to worsen into 2013. ¶ 111.

Concepts was insolvent by at least the beginning of 2012, and has remained insolvent through the date of the filing of this complaint. ¶ 112.

Rather than trying to maximize value for creditors in light of Concepts' insolvency, Roger and Kasemir instead took numerous actions to hinder and delay them. Among other actions, Roger and/or Kasemir used Concepts' services and assets to open new restaurants that were not owned by Concepts and, in at least some cases, are nominally owned by Jennifer. ¶ 8.

Consequently, when landlords began to obtain judgments against Concepts, post-judgment discovery revealed a far different picture than the one painted by the financials. Concepts now had no direct assets, no revenues, and both it and its indirect subsidiaries were encumbered. ¶ 9.

Concepts continued to have the capacity to develop and operate restaurants even after it became insolvent. ¶ 210.

From 2011 through mid-2013, Concepts used certain bank accounts to pay millions of dollars in expenses for HoldCos without any expectation of repayment. These expenses included a wide range of restaurant operating costs as well as costs required to develop HoldCos owned by Kasemir and Roger and associated restaurants. ¶ 80.

Knowing that Concepts and the Restaurant Group were insolvent and facing landlord claims, Roger began to pursue new restaurant ventures outside of Concepts, sometimes in partnership with Dennis. ¶ 140.

On December 11, 2012, a new entity called Smith & Wells, LLC was formed with the Illinois Secretary of State listing R. Kymn Harp, Concepts' outside counsel, as its registered agent. Smith & Wells was formed to develop and own, and currently does own, "Randolph Tavern" restaurant at 188 W. Randolph Street in Chicago, Illinois. ¶ 141.

According to Roger, Smith & Wells is owned by Jennifer and Dennis. Upon information and belief, Roger, Dennis and Jennifer have developed other Chicago-area restaurants since 2012 without routing those opportunities through Concepts, including: Jackson Tavern located at 216 W. Jackson Street in Chicago (owned by 216 Restaurant LLC); Lake Street Kitchen & Bar located at 410 Circle Avenue in Forest Park, Illinois (owned by Lake Restaurant & Bar LLC);

and Madison Tavern located at 500 W. Madison Street in Chicago (together with Randolph Tavern, the "New Greenfield-Dennis Restaurant Ventures"). ¶ 142.

Roger and Dennis participated in the New Greenfield-Dennis Restaurant Ventures through Tapsmith and R Consulting, respectively. Upon information and belief, Tapsmith and R Consulting are single-purpose entities formed to route management fees to Roger and Dennis and/or to disguise their involvement in the New Greenfield-Dennis Restaurant Ventures. ¶ 143.

Concepts provided development and other services to the New Greenfield-Dennis Restaurant Ventures, and was the ultimate source of funds for at least some of the New Greenfield-Dennis Restaurant Ventures' development expenses. ¶ 215.

Jennifer knowingly and substantially assisted Roger in breaching his fiduciary duties to Concepts. She helped to disguise his true interest in the New Greenfield-Dennis Restaurant Ventures for the purpose of hindering or delaying his and/or Concepts' creditors.[4] Jennifer provided this knowing and substantial assistance by (a) establishing or allowing the establishment of Smith & Wells with herself as its member; (b) appointing Tapsmith and R Consulting to be the managers of Smith & Wells, knowing they were mere fronts for Roger and Dennis; (c) allowing Smith & Wells to open, manage and profit from at least one New Greenfield-Dennis Restaurant Venture; (d) allowing Roger (through Tapsmith) to extract management fees from Smith & Wells in violation of his fiduciary duties to Concepts and to hinder or delay creditors; and (e) on information and belief, performing a similar role with respect to other new restaurant holding companies. ¶ 224.

Jennifer was regularly aware of her role in Roger's breaches of fiduciary duty. On information and belief, as Roger's wife, Jennifer knew: (a) Roger was a fiduciary of Concepts;

---

[4] The Trustee also asserted a claim against Rachel Dennis for breach of fiduciary duty. That claim was dismissed. See EOD 309.

(b) Concepts was insolvent; and (c) Concepts and Roger faced potential claims by Concepts' creditors. Moreover, until the establishment of Smith & Wells, Jennifer had not, on information and belief, owned entities connected with Roger's operation of restaurants. Jennifer also knew that despite being a member of Smith & Wells, she would not be materially involved in its operations, and she has not, in fact, had any such involvement. Jennifer thus presumably knew there was no legitimate business reason for her to have any ownership interest in Smith & Wells or any other restaurant-related venture in which Roger was actively involved; any such involvement was for the purpose of hindering or delaying creditors. ¶ 225.

The addendum to Roger's proof of claim purports to break down the $1,592,000 he claims to be owed. The chart attached to the complaint as Exhibit G annotates the addendum on a transaction-by-transaction basis. In part, $652,000 was advanced by Roger and/or Jennifer and deposited into commingled Concepts bank accounts by twelve payments on random dates between 2007 and 2013. None of these advances were documented as loans at the time, and the transactions were evidenced only by the check and corresponding deposit. ¶ 159.

On September 19, 2014, an involuntary petition was filed against Concepts. On November 18, 2014, an order for relief was entered pursuant to Chapter 7 of the Bankruptcy Code.

## LEGAL DISCUSSION

Jennifer seeks to dismiss Count VI of the Amended Complaint pursuant to Fed. R. Bankr. P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(6). She argues that the Trustee failed to state a claim upon which relief may be granted.

As the Seventh Circuit recently instructed:

> In evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all

7

> inferences in [the nonmoving party's] favor. Although a party need not plead detailed factual allegations to survive a motion to dismiss, mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Instead, [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

Berger, et al. v. National Collegiate Athletic Ass'n, et al., 843 F. 3rd 285, 289-90 (7th Cir. 2016) (citations and quotations omitted).

Ashcroft v. Iqbal, 556 U.S. 662 (2009), and its predecessor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), provide a more rigorous test for complaints than that previously applied in this Circuit. The court will review this motion to dismiss under that stricter standard, although it considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the Trustee when determining whether the complaint states a plausible claim to relief. Reger Dev., LLC v. National City Bank, 592 F. 3rd 759, 763 (7th Cir.), cert. denied, 561 U.S. 1026 (2010). Although well-pleaded facts are viewed in a plaintiff's favor, allegations that are no more than conclusions are not presumed to be true for purposes of deciding this motion to dismiss.

The Trustee brought Count VI against Jennifer and four other defendants.[5] The basis of this claim for relief against Jennifer is that she aided and abetted Roger's breach of his fiduciary duty to Concepts by helping him usurp a corporate opportunity through the New Greenfield-Dennis Restaurant Ventures.

In order to state a claim for aiding and abetting a breach of fiduciary duty, the Third Amended Complaint must contain sufficient factual matter, accepted as true, to support a plausible claim that: (1) Roger performed a wrongful act causing an injury; (2) Jennifer was aware of her role when she provided assistance to Roger; and (3) she knowingly and

---

[5] The court denied Draft Town's motion to dismiss this count and granted R Consulting's motion.

substantially assisted him in performing that wrongful act. See Hefferman v. Bass, 467 F. 3rd 596, 601 (7th Cir. 2006) (citation omitted).

Jennifer first argues that it was impossible for Roger to breach his fiduciary duty based on usurpation of corporate opportunity through the New Greenfield-Dennis Restaurant Ventures. In order to establish a claim for usurpation of corporate opportunity, the Trustee must plausibly allege that Roger: (1) was a fiduciary of Concepts; (2) took advantage of a corporate opportunity that belonged to Concepts; and (3) failed to disclose and tender the opportunity to Concepts before taking advantage of it. "A corporate opportunity is defined as a proposed activity that is reasonably incident to the corporation's present or prospective business and in which the corporation has the capacity to engage." Anest v. Audino, 332 Ill. App. 3rd 468, 477–78 (Ill. App. Ct.) (citations and quotation omitted), appeal denied, 202 Ill. 2nd 598 (Ill. 2002).

Jennifer contends that Concepts did not have the capacity to open new restaurants as of 2012. By that time Concepts was insolvent, unable to pay its debts as they came due, and landlords were pursuing it due to tenant defaults. Jennifer asks the court to infer from these allegations that Concepts lacked the ability to create and maintain new restaurants. If Concepts could not engage in the activity, it was not a corporate opportunity that Roger could have usurped.

On a motion to dismiss, however, all reasonable inferences must be drawn in favor of the non-moving party, in this case the Trustee. Although he has alleged that Concepts was insolvent as of January 2012, the Trustee contends that this does not mean that Concepts was unable to take advantage of corporate opportunities. After all, it continued to provide services to the Restaurant Group, pay expenses for the HoldCos and pay rent for the Pickwick Lane property.

9

Based on the Trustee's allegations that Concepts continued to perform these activities, it is reasonable for the court to infer at this stage of the proceedings that Concepts could have continued to develop restaurants. This inference is in the Trustee's favor, which is appropriate when deciding a motion to dismiss.

If Concepts could have continued to develop restaurants, then Roger's pursuit of new restaurant development opportunities outside of Concepts might support a claim that he usurped a business opportunity. The Trustee alleged in paragraph 215 of the Third Amended Complaint that Concepts – which was controlled by Roger and Kasemir – provided "development services and other Common Concepts Services to the New Greenfield-Dennis Restaurant Ventures. Moreover, on information and belief, Concepts was the ultimate source of funds for at least some of these Ventures' development expenses . . ." Meanwhile, the revenues from these Ventures flowed to Roger.

Having found that the Third Amended Complaint plausibly alleges that Roger performed a wrongful act causing an injury, the next elements require sufficient allegations be pled to support a claim that Jennifer was aware of her role when she knowingly and substantially provided assistance to Roger.

As recited in the Background section above, the Trustee alleged in paragraph 224 that Jennifer knowingly and substantially assisted Roger's usurpation of corporate opportunity when she helped

> to disguise Roger's true interest in the New Greenfield-Dennis Restaurant Ventures for the purpose of hindering or delaying creditors of Roger and/or Concepts. Jennifer provided this knowing and substantial assistance by: (a) establishing or allowing the establishment of Smith & Wells with herself as its member; (b) appointing Tapsmith and R Consulting to be the managers of Smith & Wells, knowing they were mere fronts for Roger and Dennis; (c) allowing Smith & Wells to open, manage, and profit from at least one New Greenfield-Dennis Restaurant Venture; (d) allowing Roger and Dennis (through Tapsmith

and R Consulting) to extract management fees from Smith & Wells in violation of their fiduciary duties to Concepts and, in Roger's case, to hinder or delay creditors; and (e) on information and belief, performing a similar role with respect to other new restaurant holding companies.

Jennifer argues that the Trustee alleged only that she had an ownership interest in Smith & Wells, which was formed to develop and own a restaurant. But why did Jennifer form Smith & Wells with Rachel Dennis? One reasonable inference the court might draw is that she wanted to be involved with the restaurant business, as her spouse was, and she had no idea that she was helping to disguise Roger's interest in the New Greenfield-Dennis Restaurant Ventures.

On a motion to dismiss, however, all reasonable inferences must be drawn in favor of the non-moving party, in this case the Trustee. And it is reasonable to infer that Jennifer established Smith & Wells in order to be a straw man for Roger – that she knew exactly what was going on and intended to provide him with substantial assistance. This inference is especially plausible because, as the Trustee alleged in paragraph 225, Jennifer had never previously owned entities connected with Roger's operation of restaurants.

Jennifer also knew that despite being a member of Smith & Wells, she would not be materially involved in its operations, and she has not, in fact, had any such involvement. It is reasonable to infer that Jennifer knew there was no legitimate business reason for her to have any ownership interest in Smith & Wells or any other restaurant-related venture in which Roger was actively involved; any such involvement was for the purpose of helping Roger to hinder or delay Concepts' creditors.

Only the evidence presented in a motion for summary judgment or (preferably) at trial will determine which inference is actually correct. At this stage, it is appropriate only to make reasonable inferences in favor of the non-movant, the Trustee.

Having reviewed the Third Amended Complaint, and made all reasonable inferences in favor of the Trustee, the court concludes that the complaint contains sufficient factual matter to state a facially plausible claim for relief against Jennifer for aiding and abetting Roger in his usurpation of a corporate opportunity.

## CONCLUSION

For the reasons stated above, the court denies Jennifer Greenfield's motion to dismiss Count VI.

Date:   February 7, 2019

                                        PAMELA S. HOLLIS
                                        United States Bankruptcy Judge